WILLIAM E. DOWELL v. THE VICKSBURG AND MERIDIAN R. R. Co.

| 61 | 519 |
|----|-----|
| 78 | 199 |
| 78 | 200 |

1. RAILROADS. *Personal injury. Attempt to board moving train.*
   A party cannot recover in a suit against a railroad company for injuries received while recklessly attempting to board a moving train, although it is shown that the train was improperly equipped and that some of its appliances were defective.

2. SAME. *Previous successful attempts.*
   Under the above circumstances the fact that the plaintiff was in the habit of boarding moving trains, or that he had been seen to do so on previous occasions with impunity, will not avail him.

3. SAME. *Section* 1047, *Code* 1880. *Employes.*
   Section 1047 of the Code of 1880 does not embrace employes among those to whom a right of action is given by it.

4. SAME. *Violation of law by company. Right of employes to recover.*
   It is better policy to deny to employes a right to recover for violations of law in which they are actors.

APPEAL from the Circuit Court of Lauderdale County.

HON. SAMUEL H. TERRAL, Judge.

The appellant, who was an *employe* of the Vicksburg and Meridian Railroad Co., received injuries while attempting to board a moving train of appellee, for which injuries he brought suit for ten thousand dollars.

The declaration contains two counts; the first count charges the defendant with negligence, in having a broken step on the engine, which occasioned the plaintiff's fall, and in having an unskillful person in charge of the engine at the time of the accident. The second count charges that the train was at the time of the accident running at a greater rate of speed than six miles an hour within the corporate limits of the town of Meridian.

The proof shows that the plaintiff, on the 29th day of October, 1881, was a minor in his twentieth year and an employe of defendant. His business was to put new cross-ties and new rails in the defendant's road, and in moving from place to place he, with others in the same business, rode on a hand car. He was a section hand, and his "section boss" was Mr. W. Mundell. *Two days* prior to the said 29th day of October, 1881, the assistant supervisor of the road, Barney Marion, ordered plaintiff, together with all of Mundell's force, to work on a certain "construction train" which worked the entire length of the road. On the said 29th of October, 1881, the train was working within two or three miles of the city of Meridian; in order to let a freight train go out from Meridian this work train with all the hands was brought into Meridian to get out of the way of the freight. After getting into Meridian the plaintiff asked permission of his "boss," Mundell, to go over in town on private business, which was granted him. He went over into town, keeping all the while within two hundred yards of his train. On hearing the freight go out he hastened on by way of the nearest street toward the point where he had left his train standing. The train, however, had started off before he could reach it, so he intercepted it at a point further down the track. His view of the moving train being obstructed by a small house near the factory,

the ground being rough, and there being an embankment a few feet high to ascend, he gave his attention to these obstacles and obstructions rather than to the speed of the train, assuming and taking it for granted that it was moving at lawful speed—not more than six miles an hour—it being in the corporate limits of the city of Meridian. Having ascended the embankment, he awaited the approach of the engine, which was already near to where he stood. The engine was running backward—tender foremost—pulling a train of five or six empty "flat cars" which were coupled on the pilot or the cow-catcher of the engine. The regular engineer, Mr. Hansell, was at the time not in his engine. The engine was being run by a negro named Jack Wharton, who professed to be only a "fireman," but who, according to the testimony, had charge of this engine and train by direction of the defendant's master machinist at Vicksburg, Mr. Brown, whose business it was to assign him his duties. The opinion of one witness is that this negro, Wharton, was an incompetent engineer. On the occasion of the injury to plaintiff the train was running at the rate of ten or twelve miles an hour over the "switches."

As the engine approached plaintiff he caught the "hand-holds" on the engine firmly with both hands, made a spring, and jumped up on the step, getting his foot in the step well, when suddenly his foot slipped off of the step, his hands broke loose from their hold, and he fell to the ground, his feet falling under the wheels of the engine, the engine and train passing over them and crushing them so that they had to be cut off just below the knees. Plaintiff did not know the train was moving as rapidly as it really was. The step off of which his foot slipped was broken. The part broken off was the front part of the *guard,* which stands up about an inch and a half high all around the edges of the step to keep the foot from slipping off. The step and guard are of iron. All engines have their steps protected or provided with this guard. Plaintiff had been on this train only two days and did not know of this defective step; had never been notified of it. The step had been broken five months.

There was no other provision made on that side of the engine

for getting on, nor anywhere else on that side of the train. There was no caboose to the train. The " hand-holds " on the engine were low enough down to be caught hold of easily.

This injury was the cause of plaintiff losing both his legs. He is damaged ten thousand dollars. Plaintiff says he is damaged a million dollars.

During the examination of plaintiff as a witness, the following question was asked him by his counsel :

" Do you know, and if so state, what the custom is among railroad employes in getting on and off trains while in motion ?"

Defendant's counsel objected to it being answered, the court sustained the objection, plaintiff excepted to the ruling, and the same is assigned as ground of error.

The witness, Luke New, was asked the following question by plaintiff's counsel :

" State, if you know, whether or not Wm. E. Dowell, the plaintiff, knew how to get on a train while in motion ?"

Also the following question :

" Did you ever see the plaintiff, Wm. E. Dowell, get on a train while in motion ?"

To each of which defendant's counsel objected. Objections sustained and the court's ruling on each excepted to and assigned as error.

Another witness subsequent to this testified, without objection, that he " has seen railroad men board trains many times while running at that speed and never saw one get hurt before ;" that he himself had gotten on trains running that fast ; while another witness swore that he himself would not have attempted what plaintiff did, and that he considered it risky.

The instructions asked by plaintiff were substantially as follows, *viz.* :

(1) " That the defendant is liable to plaintiff for any damage or injury sustained from defendant's locomotive and cars whilst they were running at a greater speed than six miles an hour through the corporate limits of the city of Meridian. Code 1880, § 1047."
(2) " That defendant owed a duty and was under obligation to

plaintiff to exercise reasonable care and prudence in the employment
of fellow servants to be associated with plaintiff, and if defendant
failed in this and plaintiff was thereby injured, then defendant is
liable, unless jury believe plaintiff was also negligent and con-
tributed to it." (3) "That defendant was under obligation and
owed duty to plaintiff to exercise reasonable prudence in providing
safe machinery, and if the jury believe that the step to engine was
defective, and that by reasonable diligence defendant could have
known of such defect, that plaintiff did not know of the defect and
by reasonable diligence could not have discovered it, and that by
the want of reasonable diligence on defendant's part in this respect
plaintiff was injured, then the defendant is liable, unless plaintiff
was negligent and contributed to it." (4) "That defendant owed a
duty to plaintiff as well as to the public imposed by statute not to
run their trains at a greater rate of speed than six miles an hour
through corporate limits of the city, and if defendant failed in per-
formance of this duty, and by such failure plaintiff was injured
then defendant is liable under first count, unless jury believe plain-
tiff was negligent and contributed to it." (5) " While defendant is
not liable for plaintiff's injury solely on account of plaintiff's fellow
servant's negligence, yet it is liable for injuries sustained in conse-
quence both of defendant's own negligence and that of fellow
servant, if plaintiff by his negligence did not contribute to it."
(6) " That if plaintiff in attempting to board the train exercised
that reasonable care and prudence which a prudent man under the
same circumstances would have done, then he was not negligent,
and in determining this the jury should consider the fact that
plaintiff was going to his work, that his habits and business had
given him experience in getting on and off trains in motion, his age
and maturity, etc." (7) "That if plaintiff did not know the train
was running faster than six miles an hour and that under the same
circumstances a prudent man would not have known it the plaintiff
had a right to assume that said train was running at a speed not
greater than six miles an hour, and the jury should consider this in
determining whether he acted as a prudent man would have done
under the same circumstances." (8) " Even if the jury believe

plaintiff did not act as a prudent man would have done, yet if his negligence did not contribute as a proximate cause to the injury then it does not prevent his recovery." (9) "That if the engineer in charge of train was an unskilled engineer, that defendant knew of it, or could by reasonable diligence have ascertained it, and that by reason of said unskillfulness plaintiff sustained injury, then he must have damages, and in assessing them are warranted in considering his suffering, etc., provided plaintiff's negligence did not proximately contribute to the injury." (10) "In estimating damages should consider plaintiff's bodily pain, loss of time, nature, extent, and duration of injury, its effects on his health, mental and physical powers, his capacity to labor, etc." (11) "That if plaintiff was injured whilst train was running faster than six miles an hour through city limits, and if plaintiff's own negligence did not proximately contribute to injury, then defendant is liable."

The foregoing instructions, eleven in number, asked by plaintiff, were each and all refused by the court, to which plaintiff excepted.

The court thereupon instructed the jury for defendant as follows:

"Though the step was defective, and though the train was running at a greater speed than six miles an hour, yet the injuries to plaintiff are to be imputed to plaintiff's own negligence, and the jury are instructed to find for the defendant."

*Dial & Witherspoon,* for the appellant.

In order to make out this case under the *first* count, all the plaintiff is required to do is to show that the injury resulted from defendant's negligence, and that he (plaintiff) exercised ordinary care in his attempt to board the train, or that the exercise of ordinary care on his part could not have prevented the consequence of defendant's negligence. We think the facts, as presented by the record, show imprudence and negligence on defendant's part, and that the following questions asked by plaintiff, embraced in the bill of assignments—*viz.:* 1. "Do you know, and if so state, what the custom is among railroad employés in getting on and off trains?" 2. "State, if you know, whether or not Wm. E. Dowell, the plaintiff, knew how to get on a train while in motion?" 3.

" Did you ever see the plaintiff, Wm. E. Dowell, get on a train while in motion ?"—were proper questions to draw out of the witnesses the proof that plaintiff understood how and did exercise " ordinary care " in getting on the train, and that the court erred in refusing to allow plaintiff to make this proof before the jury. We submit the following as pertinent to and in support of the above :

1. We contend that there are three different states of facts which clearly show negligence on the part of defendant, *viz. :*

First. The fact that the locomotive was being managed by an incompetent negro fireman at the time of accident; the fact that he was put in charge of this engine by the defendant.

Second. The fact that the train was running over six miles an hour in the corporate limits of the city of Meridian.

Third. The fact that the step to the engine was defective.

We will note just here that defendant, in asking the instructions which were granted, admits the speed to have been unlawful and the step defective. Under the *first* and *second* states of facts we invoke *N. O. J. & Gt. N. R. R. Co.* v. *Hughes,* 49 Miss. 258 ; *Howd* v. *Miss. Cent. R. R. Co.,* 50 Miss. 192. In view of this, then, these acts of negligence become the negligence of the defendant; and especially under this rule ought the defendant to be held liable for the gross negligence of its servant in running the train through the corporate limits of the city at a greater rate of speed than six miles an hour. Under the *third* fact, *viz. :* the defective step to engine, we submit that the company was in fault in using an engine with such a step. It is not enough that this engine was perfect in all its appliances when the company first put it on its road years before; but it is its duty to keep it so. Pierce on Railroads 381. If this step became unsafe and continued so for a length of time sufficient to induce the presumption that the company knew of it, *or ought to have known of it,* then the company is negligent and careless, and is liable to its employes for injuries resulting therefrom. *Howd* v. *Miss. Cent. R. R. Co.,* 50 Miss. 190; *V. & M. R. R. Co.* v. *Wilkins,* 47 Miss. 418. The plaintiff is not required to search for defects in machinery,

but has a right to presume the company is doing what it contracted to do—furnishing safe machinery. When there is a defect, it is the absolute duty of defendant to notify its servants of such defect, and its consequent risks and perils. *Wheeler* v. *Wason Mfg. Co.*, January-February, 1884, Amer. Law Review, 171 ; Pierce on Railroads 376, 378, 379; *Cayzer* v. *Taylor*, 10 Gray 274 ; Thompson on Negligence 981, § 10.

2. It cannot be charged to plaintiff that he contributed to the injury if he used ordinary care in attempting to get on the train, and still by such care could not avoid the consequence of defendant's negligence. He is only required to use "ordinary care." This we admit he is required to use, notwithstanding the fact of defendant being at fault. He ought to be allowed, however, to question witnesses on this point and to prove that he did use "ordinary care." What is the "ordinary care" which the law requires plaintiff to use? "'Ordinary care' is said to be that degree of care which may reasonably be expected from a person in the plaintiff's situation." *Wilkins' Case*, 47 Miss. 422, and authorities cited there. In asking the questions which the court below ruled incompetent, plaintiff was attempting to prove that he did use such care. A person in the plaintiff's situation or occupation acts every day just as he did—jumps on trains while in motion. Railroad men are skilled in this. Being expert at it, and the business of the road requiring it, this principle of law permits them to do it, provided they use the ordinary care which they know and recognize to be necessary on their part to acomplish the apparently hazardous feat. Anything is easy to accomplish if one only knows *how* to do it and is only careful to use the means and to conduct himself as he knows the feat requires. "Some acts which in an intruder would be negligence are not such when done by the servant in the usual and prudent discharge of his duty, as walking on the track, or stepping on it when the train is coming, or going between or under the cars." Pierce on Railroads 378. It would be extreme folly and the grossest negligence for an inexperienced person to attempt to jump on a train moving at a rapid rate, but not so with a railroad man.

3. In the next place, *he had a right to presume that the train was*

*running at a lawful rate of speed.* He was not required to stand and calculate and surmise on this. *Corroll* v. *The B. C. R. & M. R. R. Co.*, 18 Amer. Reports 22. A railway employe may always rightfully act upon the belief that all the precautions which the law and usage require are being observed in the running of the trains; such as "the giving of the customary signal by ringing the bell," "sounding the whistle," "running at a lawful rate of speed," etc. Thompson on Negligence 1021, § 25.

4. If the defendant's witness be allowed to state that the plaintiff's act was dangerous, and that he (witness) would not have attempted it, surely plaintiff ought to be allowed to prove the contrary if he can, *viz.:* that the act was not dangerous, that it was usual in this line of business, and that plaintiff understood how to use, and did use, the necessary ordinary care. "An impracticable degree of care is not required of him." Pierce on Railroads 377. It must be remembered plaintiff was going to his work, and it was necessary for him to get on the train in order to get there. Assuming, as he had a right to do, that the train was running not faster than six miles an hour—a speed which does not make an attempt to get on dangerous—there was no reckless exposure of himself.

5. It was error in the court to grant the instructions asked by defendant. It is the province of the jury to decide the question of the plaintiff's negligence. Pierce on Railroads 384; *M. & C. R. R. Co.* v. *Whitfield,* 44 Miss. 487; *Miss. Cent. R. R. Co.* v. *Mason,* 51 Miss. 244.

6. In this case § 1047, Code 1880, fixes liability. The train at the time of the injury was running at a greater rate of speed than six miles an hour in the corporate limits of the city of Meridian. Admitting, for the sake of argument, that the plaintiff was rash, reckless, and negligent, we insist that it is the duty of the court to consider the language of the statute under discussion and ascertion if its language includes such a case as the one assumed. We contend that the statute does include such a case, and that this is indicated by every word in the statute that bears on the point and by the plainest and best established rules of construction. It is impossible to show in argument that the statute does apply to this case,

because its terms are so plain and so perfectly adapted to the case at bar that its applicability admits of no argument, except a mere statement of the case, together with a statement of what is in the statute, when it becomes self-evident that the two statements are identical. For the principles for the construction of this statute see *Plummer* v. *Plummer*, 37 Miss. 199; *Leonard* v. *Corley*, 43 Miss. 696; *Koch* v. *Bridges*, 45 Miss. 258; *Eskridge* v. *McGruder*, 45 Miss. 310; *Gains* v. *Gains*, 12 Am. Dec. 377; *Lolling* v. *McKinney*, 19 Am. Dec. 724; *Hoke* v. *Henderson*, 25 Am. Dec. 678; *Brien* v. *Williamson*, 7 H. (Miss.) 20; *U. S.* v. *Miss.*, 12 S. & M. 456; *Read* v. *Manning*, 30 Miss. 319; *Dean's Case*, 30 Miss. 357; *Green* v. *Walker*, 32 Miss. 694. Other illustrations of the rule will be found in the cases of *McIntyre et al.* v. *Ingraham et al.*, 35 Miss. 25; *Edwards, Admr., et al.* v. *Gaulding et al.*, 38 Miss. 166; *Ingraham* v. *Speed*, 30 Miss. 413. But admitting for the sake of argument that the policy and object of the law must be considered, the case clearly falls within it. The testimony shows that at the towns and cities through which the railroad passes it was customary for the employes to get on and off the trains while in motion, and we venture the assertion that this happens ten times where it happens once that some stranger is on the track. Now, the statute having provided for a slow rate of speed at the very points where the servants of the defendant were in the habit of getting on, why must it be supposed that the intention of the law was not to protect these servants? Are their lives and limbs not as precious in the eyes of the law as those of other citizens? The statute is a police regulation, Thompson on Negligence 515, and the servants are entitled to the benefit of it. *Indianapolis, etc., Railroad Co.* v. *Snelling*, 16 Ind. 436.

*E. Watkins*, on the same side.

The first, fourth, seventh, and eleventh instructions asked for plaintiff and refused by the court were predicated upon our idea of the meaning of § 1047 of the Revised Code of 1880. What idea the court entertained in refusing to charge this law is wrapped in the mystery of speculation to us. Could the English language be plainer or more expressive? A railroad company having the

right of way may run its cars by steam through towns, cities, and villages at the rate of six miles an hour and no more. Can there be any construction other than the plain meaning of these words? And in so passing if any locomotive or cars are run at a greater rate of speed the company shall pay one hundred dollars, to be recovered by suit in the name of such town or village for its use. The obvious purpose of this law is the safety of the community. Could any conceivable act of such town, city, or village be set up to defeat such recovery? I apprehend that no one would claim that it could. Surely, under the plain language of this act, it could not. It is the emphatic declaration of the statute regulating the movement of trains in densely populated sections of the country. Connected with this obligation and subject to the same law and rule of construction this same company shall, moreover, be liable for any damages or injury which may be sustained by *any one* from such locomotive or cars whilst they are running at a greater rate of speed than six miles an hour through any city, town, or village. Could we mistake the meaning of this law? Measured by the plain construction of unambiguous words and sentences, no evasive construction can be placed upon it. This rule as here expressed is not limited to passengers; it is not confined to strangers and trespassers; nor does it in its clear and explicit announcement of the penalty exclude employes from its protection. That rigid rule established by the courts of the country denying employes of railroad companies the right of recovery for an injury sustained by reason of the negligence of his co-employe is by the particular language of this act eliminated from this question, and why should it not be? "*Any* person" is the plain and unmistakable language used. Again, I would ask why employes should not be placed on the same footing with other persons? The very object of the law is to protect life and property under peculiar circumstances, and should the life of an employe of a railroad, a human being, not be protected under this law as much so as the rights of an owner of a cow, a hog, or a goat? In the unobtrusive light of reason an affirmative answer is echoed. But the strongest legal grounds for withdrawing the rule in this case is found in the fact

that the rate of speed when greater than six miles an hour is not the negligent act of a co-employe but by legal construction is *per se* the direct negligence of the defendant, hence appellant is not in this action embarrassed by this contracted rule. Running at a high rate of speed is extra hazardous, hence the humane necessity of this law. By the manifest meaning of this act it is clear that the legislature considered not greater than six miles an hour safe for all practical purposes, even in densely populated cities and towns ; safe for people and stock on the track of a railroad company or at public crossings to get out of the way ; safe for parties and employes who have business on the cars of such to alight while in motion if they so desire ; as well as safe for parties whose business is on such trains to board them while in motion if they so desire. This being the law, plaintiff below had the reasonable right to presume until the contrary did appear that the train of cars and locomotive by which he was hurt were not running in violation of the law of the State. *Correll* v. *Burlington, etc., R. R Co.,* 38 Iowa 120. See also *Indianapolis, etc., R. R. Co.* v. *Peyton,* 76 Ill. 340 ; *Houston, etc., R. R. Co.* v. *Terry,* 42 Texas 451 ; *Monahan* v. *Keokuk, etc., R. R. Co.,* 45 Iowa 523 ; *Toledo, etc., R. R. Co.* v. *Deacon,* 63 Ill. 92 ; *Chicago, etc., R. R. Co.* v. *Reedy,* 66 Ill. 45; *Blair* v. *Milwaukee, etc., R. R. Co.,* 20 Wis. 254 ; *Corwin* v. *N. Y., etc., R. R. Co.,* 13 N. Y. 42–53 (see fifth U. S. Statutes at Large 304 for 1838); *McMahon* v. *Davidson,* 13 Minn. 357 ; *May* v. *Davidson,* 13 Minn. 523 to 537; *Cooper* v. *Iowa Cent. R. R. Co.,* 44 Iowa 134; *Chicago, etc., R. R. Co.* v. *Taylor,* 69 Ill. 461 ; *Vase* v. *Lancanshire, etc., R. R. Co.,* 4 Hurl. & N. 728 ; *Munch* v. *N. Y., etc., R. R. Co.,* 29 Barb. 647 ; *Duffy* v. *Same,* 2 Hilt. 496 ; *McDowell* v. *Same,* 37 Barb. 195 ; *Flint, etc., R. R. Co.,* v. *Lull,* 28 Mich. 510 ; *Jeffersonville, etc., R. R. Co.* v. *Ross,* 37 Ind. 549 ; *Corwin* v. *N. Y. R. R. Co.,* 13 N. Y. 42 ; *Sheaf* v. *Utica, etc., R. R. Co.,* 2 N. Y. S. C. (T. & C.) 388 ; *Manning* v. *Long Island R. R. Co.,* 2 N. Y. S. C. (T. & C.) 585 ; *Rhodes* v. *Utica, etc., R. R. Co.,* 5 Hun. 344 ; *Correll* v. *Burlington, etc., R. R. Co., supra; Jetter* v. *N. Y., etc., R. R. Co.,* 2 Keyes 154 ; *Gray* v. *Pullen,* 5 Best & S. 970 ; S. C., 34 L. J. Q. B. 265 ; 13 Week. Rep. 257 ; *Mersey Docks* v. *Gibbs,* L. R. 1 H. L. 93 ; *Dodge* v. *Burlington, etc., R. R. Co.,* 34 Iowa 276 ;

*Salisbury* v. *Herchmroder*, 106 Mass. 458; *Riddle* v. *Proprietors*, 7 Mass. 169; *Penna., etc., Canal Co.* v. *Graham*, 63 Pa. St. 290; *Pennsylvania R. R. Co.* v. *Patterson*, 73 Pa. St. 491.

*Nugent & McWillie*, for the appellee.

There is absolutely nothing in the case presented by the record; the verdict and judgment below were manifestly correct, and the appeal has the seeming of an experiment only. The attempt made by appellant to board the "work train" while in motion was an act of pure recklessness and the proximate cause of the injury received. He saw the train nearing, knew all about the "step" complained of, and recklessly tried to mount the locomotive. There is nothing to relieve the act. He was an employe of the company and tries to avail himself of the statute which prohibits a train from moving through a town more than six miles an hour. *He was part of the train* himself, and the statute does not apply to him. *R. R. Co.* v. *Hughes*, 49 Miss. 285. Getting on and off a vehicle in motion is almost always fatal to a recovery of damages for any injury occasioned thereby, though in part attributable to the negligence of the carrier; and the case here presented has been expressly decided, we think. *L. S. & Mich. So. Ry.* v. *Bangs*, 3 Am. & Eng. Ry. Cas. 426–32; *Purl* v. *St. Louis Ry. Co.*, 6 Am. & Eng. Ry. Cas. 27–30; *I. & G. N. Ry. Co.* v. *Jordan*, 10 Am. & Eng. Ry. Cas. 301–6. The statute relied upon in this case was not intended for the benefit of reckless employes or servants of railway companies. It is severe enough as it is, and should not be extended. It makes such companies "liable for all damage resulting from such excess of speed, whether it be done while such speed is maintained or by reason of it having been maintained it has become impossible to check the train in time to avoid collisions." There is nothing to indicate that the appellant was injured because of the violation of law by the company or that any damage resulted to him because of the excessive speed of the train. But the statute does not apply to employes at all.

CAMPBELL, C. J., delivered the opinion of the court.

The circuit court properly instructed the jury to find for the

defendant.   A recovery by the plaintiff could not have been permitted to stand, and it was right to tell the jury so.   The facts are undisputed and the inferences to be drawn from them are unmistakable.   The plaintiff brought his misfortune on himself by his own recklessness and cannot visit its consequences on another. This is decisive against him under the first count of his declaration, and it would not have availed him to prove that he knew how to get on a train in motion, and had been seen to do it with impunity, and that it is customary for railroad men to do this.

Without deciding any other question under the second count, we hold that the plaintiff was not entitled to recover because the statute on which it is based, § 1047, Code of 1880, does not embrace employes among those to whom a right of action is given by it. This section and others in connection with it were brought forward from the Code of 1857, and it was held in *N. O. J. & G. N. R. R. Co.* v. *Hughes,* 49 Miss. 258, that one of the sections did not include employes, and it must follow that the section under consideration does not embrace them.   Aside from authority, we consider it better policy to deny to employes a right to recover for violations of law in which they are themselves the actors.   The statute forbidding a greater speed than six miles an hour in towns is more likely to be observed by employes on trains if they are required to take all risk of violating it.   To permit them to violate the statute and to derive advantage from it would serve to tempt to disregard it.

*Affirmed.*