LOUISE FARQUHAR ET AL. v. ALABAMA & VICKSBURG
RAILWAY COMPANY.

1. RAILROADS. *Fellow-servants. Engineer. Yardmaster. Constitution*
   1890, *sec.* 193.  *Code* 1892, § 3559.  *Laws* 1898, *p.* 84.

   The engineer of a switch engine is not a superior agent or officer of
   the railway company to a yardmaster of the same company,
   within constitution 1890, sec. 193, and code 1892, § 3559, as amended,
   laws 1898, p. 84, modifying the common law fellow-servant rule.

2. SAME.  *Constitutional recognition.*

   The constitution of 1890, sec. 193, having modified the fellow-servant
   rule in part, and authorized the legislature to further modify it,
   thereby recognized so much of it as has not been abrogated by
   that instrument or subsequent legislation.

3. SAME.  *Death.  Cause of action for.  Lord Campbell's act.  Laws* 1898,
   *p.* 84.

   The next of kin of a yardmaster cannot recover of a railroad com-
   pany for his death, caused by the negligence of the engineer of a
   switch engine operating in the same yard with the decedent.

4. SAME.  *Speed in municipalities.  Contributory negligence.  Code* 1892,
   § 3546.  *Laws* 1896, *p.* 76.

   The act of 1896 (laws 1896, p. 76), amending code 1892, § 3546, by
   repealing that portion of the code section which imposed a fine on
   railroad companies for running their trains within a municipality
   at a greater rate of speed than six miles per hour, does not deprive
   such companies of the defense arising out of the contributory
   negligence of a party injured by a train running at an unlawful
   speed.  *Collins* v. *Illinois, etc., R. R. Co.*, 77 Miss., 855, approved.

FROM the circuit court of Warren county.

HON. OLIVER W. CATCHINGS, Special Judge.

Louise Farquhar, and the other appellants, were the plaintiffs
in the court below; the railway company was defendant there.
One of the plaintiffs was the mother, and the others the broth-
ers and sisters, the next of kin, of Edward Farquhar, deceased,

for whose death the action was brought. The decedent was killed at Vicksburg August 21, 1899. The facts are fully stated in the opinion of the court.

*Anderson & McLaurin*, for appellants.

Under the decisions of this court, we are free to admit that we were not surprised at the ruling of the court below. We shall ask this court to make a departure from the old line of decisions, under the changed policy of the constitution and legislation of our state.

It will be observed that Edward Farquhar was killed because the engineer was running the switch engine at a rate of speed greater than six miles an hour within the corporate limits of the city of Vicksburg, contrary to § 3546, code of 1892, together with the fact that defendant negligently failed to discover and remove the tap or nut that had been placed or had fallen on the rail of the railroad track. But we are met with the decision of this court in *Dowell* v. *Vicksburg, etc., R. R. Co.*, 61 Miss., 519, in which Judge Campbell, speaking for the court, at page 532, says that § 1047, code of 1880, which is now § 3546, code of 1892, "does not embrace employes among those to whom a right of action is given by it." Then he cites, in support of this position, the decision of Judge Simrall, in *New Orleans, etc., R. R. Co.* v. *Hughes*, 49 Miss., 258, in which he holds that art. 43, code of 1857, p. 299, does not give a right of action to railroad employes. But Judge Campbell further says, in the Dowell case, *supra:* "Aside from authority, we consider it better policy to deny to employes a right to recover for violations of law in which they themselves are the actors. The statute forbidding a greater speed than six miles an hour in towns is more likely to be observed by employes on trains if they are required to take all the risk of violating it. To permit them to violate the statute, and derive advantage from it, would serve to tempt to disregard it." It seems that this decision has hitherto remained unchallenged, for the reason

that it so rarely occurs that an employe is injured by the running of a train at a greater speed than six miles an hour. But with all due deference to the learned judge who rendered that opinion and the court which has acquiesced in and followed it, we think the rule announced is harsh, inhuman, unholy and unrighteous. It has come down to us from the influence of the feudal ages, when all laws were declared by and for the feudal lords, and when the serf, workingman or employe was considered to have little or no legal rights, and was held to be only a slight remove above the chattel. It grows out of and is really a part of the old English fellow-servant doctrine, which was first enunciated in the English case of *Priestly* v. *Fowler*, 3 Mees & Webb, 1, and followed in this country in the case of *Murray* v. *Railroad Co.*, 1 McMillan, 398. From this start it spread like a prairie fire throughout all the states of the union, including our own state, the courts, save in a few notable instances, refusing to recognize any exceptions whatever. The same reasons were uniformly given for their positions, and for refusing to allow any exceptions, namely, "public policy," etc.

Although the supreme court of the United States and a few of the states adopted the vice-principal rule, and although our court, as well as others throughout the union, was urged and importuned to at least go that far, they were obdurate, and continued to cry, "Public policy." At last the people, who are the arbiters of public policy, said through their constitutional convention and their legislatures that such a rule was against public policy; that it was harsh and unrighteous, and engrafted on it some humane exceptions. This course has been very generally adopted in other states. Now, we ask what has been the result to the railroads and to the public by this change in public policy? Have the calamities predicted by the courts followed? Is it not the common observation of all that the resultant good far outweighs the evils? Greater care is exercised in the employment of servants, better and more skillful men are called to positions, fewer accidents and injuries occur,

stricter supervision is had over the work and conduct of employes, and the public generally gets more efficient service than under the old rule.   There was, however, some excuse and reason heretofore for the court's adhering to that old rule. They had no voice of the people to guide them, no legislative action to follow.   But our court has of its own motion, on its own judgment of "public policy," engrafted an exception on a plain and unambiguous statute when it says that § 3546, code of 1892, making railroad companies "liable for any damage or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village, does not embrace employes among those to whom a right of action is given by it."   *Dowell case, supra.*

What right had the court to except employes, when the legislature, the lawmaking power of the state, which makes laws for the courts to follow and enforce, and not to abrogate and annul, says that "any one," without exception, shall have this right of action?   Because, forsooth, they "consider it better policy to deny to employes a right to recover for violations of law in which they are themselves the actors?"   When the legislature enacts and declares a "policy," what right has the court to say that it is a bad policy, and refuse to follow or enforce it?   Then, look at the facts of this case.   Edward Farquhar was not an "actor" in the violation of this law.   He had nothing on earth to do with the speed of this train.   That rested solely and exclusively with the engineer.   Why, then, say that he or his next of kin shall not recover because he was an "actor" in that violation?   How could he "observe" this law when it was impossible for him either to observe or violate it?   It would seem that the court would, in the name of the public good, like to encourage a policy of espionage on the part of one employe over his fellow, in our opinion the most degrading, unmanly and dishonorable act of which a person can be guilty.   The changed policy of the law demands that this

decision should be overruled and that we should recover in this case. The statute, § 3546, code 1892, demands it, justice and good conscience demand it, and we therefore ask the court for such a decision.

Again, we are met with the fellow-servant doctrine. As already observed, this is so close akin to the doctrine that we have been discussing that it cannot well be separated from it. Answering this position, we contend, first, that decedent came within the exception to the rule announced in § 3559, code of 1892, in that he and the engineer on the switch engine were engaged in different departments of labor or about different pieces of work. They were entirely independent of each other in their respective vocations. Deceased was yardmaster, supervising a crew of men in breaking and making up trains and in placing them in position at depots, warehouses, etc., for loading and unloading, etc., while the engineer ran the switch engine, having full and exclusive control thereof. If that position be thought untenable, we contend, second, that at the time of the injury the yardmaster was not a fellow-servant of the engineer in any sense, for, at the time, he was riding as a passenger from the transfer boat on the Mississippi river to the yards of appellee, near the passenger depot, a distance of about two miles, therefore recovery is unavoidable. But above and beyond all this, thirdly, the repeal of the penalty denounced in this § 3546, code 1892, by the acts of 1896, p. 76, makes the appellee liable in this proceeding at all hazards.

*Mc Willie & Thompson*, for appellee.

The party killed, the yardmaster and the engineer were fellow-servants. There can be no controversy on this point. In view of the decision of this court, rendered in 1893, in the case of *Evans* v. *Louisville, etc., R. R. Co.*, 70 Miss., 527, which case is a deliberate, well-considered and correct exposition of section 193 of the constitution of 1890 on the fellow-servant rule as established in this state, it seems to us a little

remarkable, at this late day, after the fellow-servant rule has been so well established in Mississippi by a large number of decisions—after that rule was recognized by the constitutional convention of 1890 itself, and after it was modified and narrowed, not abolished, by the fundamental law of the state—that the counsel of the appellants would, by an argument against the wisdom of the original rule, undertake to change the constitution itself. We say this because the constitution recognized as still existing that portion of the old rule which it did not expressly abolish. While it authorized the legislature to change what it left of the rule, it did not authorize the courts to do so, but, by implication at least, negatived such power in the judiciary.

It is also strange that the counsel for the appellants would ask this court to overrule the case of *Dowell* v. *Vicksburg, etc.,* *R. R. Co.,* 61 Miss., 519, and other decisions of this court approving of that case. It must be remembered, too, that the section of our code prohibiting railroad companies from running trains at a greater rate of speed than six miles an hour within the limits of a municipality has been readopted by the legislature since the case was decided, and its readoption was in the light of that and other like decisions.

That portion of the brief of adversary counsel which is predicated of the amendment of § 3546, code, by the act of 1896 (laws 1896, p. 76), must have been written without knowledge of the recent decision of this court in the case of *Collins* v. *Illinois, etc.,* *R. R. Co.,* 77 Miss., 855. The Collins case is a complete and perfect answer to the argument made by adversary counsel as to the effect of the act of 1896.

Unless, therefore, the case of *Dowell* v. *Vicksburg, etc.,* *R. R. Co.,* 61 Miss., 519, and the cases following it, and the case of *Evans* v. *Louisville, etc.,* *Ry. Co.,* 70 Miss., 527, and the cases following it, and the case of *Collins* v. *Illinois, etc.,* *R. R. Co.,* 77 Miss., 855, are all to be overruled, we confidently

expect an affirmance of the judgment appealed from in this case.

TERRAL, J., delivered the opinion of the court.

The appellants sued the defendant company for damages arising from the death of their son and brother, Edward Farquhar. Edward Farquhar was the yardmaster of the defendant company at Vicksburg, and, in making a transfer of the passenger train across the Mississippi river, and while riding upon a flat car propelled by the switch engine, he was thrown from the car and received fatal injuries, from which he soon thereafter died. The switch engine was running at the rate of about twenty-five miles per hour, and ran over a large iron nut then accidentally upon the track, which caused the misfortune. A demurrer to the complaint was sustained. The appellants admit that the action of the circuit court is in accordance with the decisions of this court in *New Orleans, etc., R. R. Co.* v. *Hughes*, 49 Miss., 258, and in *Dowell* v. *Vicksburg, etc., R. R. Co.*, 61 Miss., 519, but they insist that the rule there laid down is erroneous. Counsel argue that the rule of law announced in those cases is a barbarism of feudal antiquity, when, they say, an employe had little or no legal rights, and was slightly removed above a chattel. And counsel then tell us that this rule of feudal barbarism was first promulgated in *Priestley* v. *Fowler*, 3 Mees. & W., 1; but a look at *Priestley* v. *Fowler* shows that case was decided in 1837, more than one hundred and fifty years after feudalism had been abolished in England, and when not a single serf existed in that country, and when it was the boast of English judges that when a slave put his foot upon English soil he thereby became a freeman. The doctrine pertaining to the relation of master and servant is not the outgrowth of feudalism; it belongs to all ages, and society, in its most refined and elevated conditions, requires its continuance. Indeed, without this relation we should drift back into barbarism. A perusal of the *Priestley-Fowler* case

will demonstrate the justness of the principles upon which it rests, and those principles have been approved and followed by courts of the highest character and by judges of the greatest distinction. To overrule the several decisions of this court holding the doctrine here assailed, would not be justified by the facts of this case.

The dropping of the iron nut upon the rails of the track was a mere accident, and the least hint from the yardmaster to the engineer would doubtless have brought the engine to a safe speed. That the engineer is not a superior agent or officer to the yardmaster is made manifest by the definition of that relation contained in *Evans* v. *Louisville, etc., Ry. Co.*, 70 Miss., 527, s.c. 12 South., 581. And especially may we not overrule the cases of *New Orleans, etc., R. R. Co.* v. *Hughes* and *Dowell* v. *Vicksburg, etc., R. R. Co.*, since the constitutional convention of 1890, with full knowledge of the doctrine of those cases, has, in section 193 of that instrument, defined the rights between employes and railroad corporations, and has left untouched the rights of the parties in cases like the present.

The argument of counsel that the repeal of the $100 penalty (laws 1896, ch. 63) for running locomotives or cars through cities, etc., at a greater rate of speed than six miles an hour, in effect so changes the law as to make the railroad company liable in all cases, in all events, and to all persons, for all damages sustained by any one from the locomotive or cars while they are running at a greater rate of speed than six miles per hour, is in the face of the decision of this court in *Collins* v. *Illinois, etc., R. R. Co.*, 77 Miss., 855, s.c. 27 South., 837. The argument of counsel, logically followed, would lead to the conclusion that if the injury was inflicted upon an employe of the company while the locomotive was running through a city or incorporated town or village at a rate of speed greater than six miles an hour, the company would be liable, though the employe wilfully and of his own wrong, and without any negligence of the company except that of running its locomotive

---

---

at a greater speed than six miles an hour, should cast himself under the wheels of the locomotive, and so be injured, a conclusion which would be manifestly absurd.

*The action of the circuit court is affirmed.*