JOHNSON & STEVENS v. BUTLER.

Sections 1846 to 1851 of the Code, inclusive, were intended to draw the line, and recognize the distinction, between actions *ex contractu* and actions *ex delicto.*

Sections one and three of the act allowing and regulating writs of attachment, approved February 16, 1843, recognize the distinction between actions *ex contractu,* and actions *ex delicto.*

When a judgment has been recovered for a *tort,* it then is fixed and certain, and is a *debt,* as much as if it were recovered upon a promise; and an action brought upon such a judgment, under the present, as well as the former practice, is an action *ex contractu.*

Where in an action, commenced by attachment, on a judgment recovered in another state in an action of replevin, the defendant moved to quash the attachment, because the writ had not been allowed as required by section 1851 of the Code, which motion was sustained, and the writ quashed; *Held,* That the court erred in quashing the attachment.

A motion to compel a party to produce a paper, the existence of which is not shown by the record, must be supported by an affidavit, showing the requisite facts.

But whether such an affidavit is required, when the record does show the former existence of such paper, *quere ?*

In an action upon a judgment recovered in another state, the defendant cannot plead any defence which he might have made in the former suit.

In such an action, the plaintiff can, *by pleading,* be compelled to show enough of the record, to prove a valid judgment recovered; but he cannot, by motion, be obliged to produce any particular part of the record.

And where, in such an action, the defendant filed a motion, that the plaintiff be ruled to complete the record, by filing a certain paper described in the motion, which motion was sustained; and where, the paper not being produced, the court rendered judgment of nonsuit against the plaintiff; *Held,* That the court erred in sustaining the motion, and dismissing the suit.

*Appeal from the Dubuque District Court.*

BUTLER brought an action of replevin, in Jo Daviess county, Illinois, against Henry R. Merkling, and in that action, took possession of a considerable quantity of personal property, the principal value of which consisted in its almost constant use. Such proceedings were had in the cause, that Merkling recovered judgment against Butler for $2,200, for the detention of the goods. Butler filed a motion to set aside

the verdict, and for a new trial, which was overruled by the Circuit Court. The matter was taken to the Supreme Court of Illinois, and reversed. On a new trial in the Circuit Court, Merkling recovered a verdict and judgment, for $1,833.33. To set aside which, another motion was made, but it was overruled. The cause stood thus in the courts of Illinois. Merkling assigned the above judgment to the present plaintiffs, who now sue Butler on that judgment, in Iowa, with the auxiliary process of attachment, based upon the ground that the defendant, Butler, was not a resident of the state of Iowa. In the District Court of Iowa, in Dubuque county, the defendant moved to dismiss the attachment, because the provisions of section 1851 of the Code were not observed, which motion was sustained.

It appears that in the Circuit Court of Illinois, the then defendant, Merkling, moved for leave to take from the files, the motion and reasons of the plaintiff, filed for arrest of the verdict and judgment thereon, which leave was granted. This motion was made after the second verdict and judgment were rendered; to wit, on the 28th May, 1855. And on the 30th of the same month, another motion was made to set aside the second verdict and judgment, which was overruled. In the District Court of Iowa, the then defendant, Butler, moved that the plaintiffs, "be ruled to complete the record and proceedings, upon which this suit is brought, by filing a certified copy of the exceptions, upon which, as appears by the record, the Supreme Court of the state of Illinois, reversed the judgment obtained in the Circuit Court of Jo Daviess county. The court in Dubuque county, sustained this motion, and ordered the paper to be produced, to which the plaintiffs excepted; and the paper not being produced, the court rendered judgment of nonsuit against the plaintiffs.

*Smith, McKinlay & Poor*, for the appellant.

Is a judgment of a court of record of the state of Illinois (or any other judgment), a contract within the meaning of section 1849 of the Code of Iowa? Blackstone Com. 446

Johnson & Stevens v. Butler.

(original paging), says: "A debt of record, is a sum of money which appears to be due by the evidence of a court of record. Thus, where any specific sum is adjudged to be due from the defendant to the plaintiff, on an action or suit at law, this is *a contract* of the highest nature, being established by the sentence of a court of judicature." Chitty on Contracts, 2, says: "Contracts may be classed in their relative order or degree of superiority: 1. Of record; 2. Specialities; 3. Simple contracts." " 1. Contracts of record: contracts or obligations of record, are judgments, recognizances, or statutes staple, and these are of superior force, because they have been promulgated by, or founded upon, the authority, and have received the sanction, of a court of record." Story on Contracts, 2, says: " Contracts are divided into three classes: 1. Contracts of record, such as judgments, recognizances, and statutes staple." Parsons on Contracts, ·7, says: Contracts by specialty, are of two kinds, contracts under seal, and contracts of record. These last are judgments, recognizances, and statutes staple." Such is the definition of every elementary writer on the subject; and is it not fair to presume that the legislature framed the law, with these definitions in view, rather than the definition given by the court of Illinois, in the case in 3 Scammon, 268, which case is the only one relied on by the other side, to sustain their view of the case? The only authority cited by the court, in 3 Scammon, 268, is 3 Burrow, 1548; but the correctness of the decision in 3 Burrow, is doubted by Lord Mansfield, at the next term, in *Trinder* v. *Watson*, 3 Burrow, 1566. The very point arising in this case, was decided in the case of *McGuire* v. *Gallagher*, 2 Sandford's S. C. 402. The court says: " We regard a judgment, as being a contract of the highest character."

The Code, section 2503, provides that the Code shall receive a liberal construction, in order to carry out its general purpose and objects. The general purpose and object of sections 1849 and 1851 of the Code, is, to ascertain how much property may be attached by the sheriff. If the action is founded on contract, the sheriff must levy upon

property fifty per cent. greater than the amount sworn to be due; but if not on contract, for instance, if for assault and battery, trespass, or slander, where no amount can be arrived at, until a verdict be had, the plaintiff must present his petition to a judge, who, from the case stated, shall make an allowance of the amount in value of the property that may be attached. The amount to be recovered, is so uncertain in such cases, that the petitioner is not permiteed to fix the amount of his damages, so far as the proceedings in attachment are concerned, but some judge must do it for him, until the damages are properly ascertained by a jury. A judgment of a court of record, has no such uncertainty about it; the amount due is easily ascertained. It is equally certain as any other contract. A judgment, therefore, is a contract under section 1849 of the Code.

The other point in the case, is the action of the District Court in dismissing the cause, because of plaintiff's refusal to file a copy of the exceptions referred to in a motion made by defendant's counsel. The motion was founded, not upon a fact, but upon a mere assumption of a fact. It moves that the transcript be made complete, by filing a copy of the exceptions, whereas, an inspection of the record will show, that no exceptions were taken, nor were any referred to, in the opinion of the Supreme Court of Illinois; besides, the certificate to the transcript, shows that the transcript is complete, and were it allowable to impeach the certificate, by motion, as was attempted in this case, it would be necessary to show, by the transcript itself, or by affidavit, that it was incorrect. The motion was not supported by affidavit, and as it was founded upon an alleged fact, which was nowhere apparent in the record, it was not entitled to be heard by the court. The acts of Congress of 26th May, 1790, and 27th March, 1804 (see Code of Iowa, 568), provide for the manner in which a record of a court of a sister state, shall be certified, and the transcript in this case, is certified precisely as required; and, therefore, full faith and credit ought to be given to it, as provided for by these acts of Congress. The clerk's certificate is, that the transcript is complete, and the District Court had no au-

thority, under the circumstances, to say that it was incomplete.

*Nightengale & Wilson*, for the appellee.

The question presented, is simply : Is a judgment, recovered in an action of replevin in another state, a demand founded on contract, within the meaning of chapter 109 of the Code ? The proceedings authorized by that chapter, are limited to actions for the recovery of money. To warrant an attachment under this chapter, the defendant contends, that there must be an obligation existing, either to pay money, or growing out of a contract, the amount of which may be determined, either by the obligation itself, or from circumstances naturally flowing from the contract, upon which a jury may compute it. *Clark's Ex'rs* v. *Wilson*, 3 Wash. C. C. 560 ; *Hazard* v. *Jordan*, 12 Alabama, 180. The relation of creditor and debtor must exist. A liability merely in damages, where there is no debt, will not sustain an attachment. *Hazard* v. *Jordan*, 12 Alabama, 180; *Black* v. *Zacharie*, 3 How. 483. It will not apply to an action of trover (*Marshall* v. *White*, 8 Porter, 551; *Hynson* v. *Taylor*, 3 Arkansas, 552; *Hutchinson* v. *Lamb*, Braynton, 234); nor for a malicious prosecution (*Stanly* v. *Ogden*, 2 Root, 259); nor for an assault and battery (*Minga* v. *Zollicoffer*, 1 Iredell, 278); nor to recover the amount of expenses incurred for medical and surgical services, and loss of time, resulting from a wound inflicted by defendant (*Prewitt* v. *Carmichael*, 2 Louisiana Annl.); nor for damages sustained by plaintiff, through a wrongful sale of property upon execution (*Griener* v. *Prendergast*, 3 Louisiana, 376); nor for a collision between steamboats (*Swager* v. *Pierce*, 3 Louisiana, 435); nor for damages sustained by a steamer running into, and destroying a house (*Holmes* v. *Barclay*, 4 Louisiana Annl. 63; *M'Donald* v. *Forsyth*, 13 Missouri, 549); nor to recover of common carriers, damages for loss of trunk, where declaration is in tort, and not in contract (*Porter* v. *Hildebrand*, 14 Penn. 129); nor in an action on the case, for money of the plaintiff, stolen by defendant (*Piscataqua Bank* v. *Turnley*,

1 Miles, 312). From these authorities, it is obvious, that there must be something more than the inchoate right to claim damages, to constitute a cause of action upon which an attachment may issue.

These decisions have been made in the courts of states, where the language of the statutes relating to attachments, is as comprehensive as in Iowa. In New York and Ohio, we find the same phraseology as in this state, and in the statute of the latter state (Ohio), the legislature, in subdivision nine of their act, expressly declare that the writ shall issue in demands arising upon contract and judgment, seemingly distinguishing between the two. In Delaware, North Carolina, Arkansas, Texas, Illinois, Louisiana, Maryland, and Missouri, the language of their acts is, either "justly indebted" or "indebted." In Virginia, it is, "debt or damages for breach of any contract;" and in most of the other states, the relation of creditor and debtor, is obviously contemplated. It will be apparent, therefore, that the scope of the statutes of the various states, providing this remedy (attachment), is merely to secure an indebtedness, and not to avenge a wrong. *Sargeant* v. *Helmbold*, Harper (S. C.), 219; *Besley* v. *Palmer*, 1 Hill, 482; *Hynson* v. *Taylor*, 3 Pike, 552.

Although all forms of action are abolished in the state of Iowa, this change operates merely upon the mode of enforcing a right, but does not change the right itself. Judging from the nature of this writ, the purpose for which it was applied, previous to the Code, and in the absence of any intimation that it would be extended in its operation, it cannot be supposed that the legislature intended it should be made use of in cases of tort. At common law, the writ of replevin issued, in the first place, for the restitution of the goods wrongfully taken, with damages for the detention. In Illinois, it lays for the wrongful taking or detention of goods and chattels, and judgment is for damages for the detention. The action does not grow out of contract, and even if it did, the form of action would determine the remedy. *Porter et al.* v. *Hildebrand*, 14 Penn. 129. The defendant, therefore,

Johnson & Stevens v. Butler.

insists, that actions for torts are not within the scope of these statutes relating to attachments; that replevin is an action of mere tort; and that, even were it not, the form of action adopted in Illinois, would be conclusive upon the courts of this state, that the judgment was recovered for a tort.

But it will be urged on the part of the plaintiff, that the claim in this suit, is a judgment of a sister state, and imports, or is, a contract; that the subject matter of the original suit is merged; and that the courts of this state cannot look into the record to ascertain the original cause of action. Passing by, for the present, the question, whether a judgment is a contract or not, the question of the right of the courts of this state, when applying the statutory remedies, to look into the record, presents itself. First, let us look at the consequences of this doctrine: A judgment for assault being recovered in an inferior court of this state, might be sued upon in a higher court, and the plaintiff would then be entitled to a remedy denied him in the original action. Would the court, in such a case, feel itself bound to issue the writ, although the judgment record disclosed a state of facts which would not warrant it, if the suit had been originally instituted before it. And why should it not be equally bound by the judgment of a court of our own state, as by that of a court of another state? Suppose the judgment to be recovered in a court of record of this state, would it not be equally conclusive upon the merits, as a foreign judgment, and would not the defence be equally limited?

As between different states, judgments of competent courts, having obtained jurisdiction, it is admitted, are conclusive evidence of the issues they are composed of. The record establishes a determination of those issues for the court, and in an action of tort, is merely evidence that the plaintiff has recovered a verdict of certain damages. To use the phrase, often adopted by the reports, " a judgment is evidence of indebtedness," but for the nature of that indebtedness, the original cause of action is the only test. Courts are not precluded from inquiring into the circumstances which produced the judgment; they are merely prohib-

ited from questioning them, as certified in the record. The courts of each state, are the sole judges of the remedy. They are to apply it, and as a general rule, in special proceedings, it is incumbent, as a condition precedent, that the plaintiff shall show those facts to exist, which will entitle him to the process. In a proceeding of this nature, they must be satisfied, that there is a contract, under one section of the statute; that it is capable of being liquidated; and in the other, that there is a debt or liability, and the test of damages. A contract might be shown, and the measure of damages lost. *Clark's Executors* v. *Wilson*, 3 Wash. C. C. 560. But in *Evans* v. *Sprigg*, 2 Md. 457, the court say: "That a judgment is to some purposes, a merger of the original contract, and constitutes a new debt, yet when the essential rights of the parties are influenced by the nature of the original contract, the court will look into the judgment, for the purpose of ascertaining what the original contract was."

But is a judgment a contract? In the case of *Bidleson* v. *Whytel*, 3 Burrow, 1545, upon a writ of error brought upon an action of debt on a judgment, it was held, under the statute of 3 James I, c. 1, in regard to holding to bail: "1. That the *contract* is extinguished by the first judgment; 2. That a *judgment* is no contract, nor can be considered in the light of a contract; 3. Another reason why bail cannot be insisted upon is, that an action of debt upon a *judgment*, is an action of a *superior nature* to an action of debt upon bond, or any of the other actions particularly specified in this statute of 3 James I; and, therefore, shall not be included in it, agreeably to the reasoning used in *Archbishop of Canterbury's Case*, 2 Rep. 466: 'That if the makers of the statute had *intended*, that it should have extended to this action of a superior nature, in addition to those which are specified in it, they would have *begun* with it, and would have mentioned it, *prior* to those of an inferior nature.' Another reason is, that this statute ought rather to be taken *literally*, than extended." In *Trinder* v. *Watson et al.*, 3 Burrow, 1567, Lord MANSFIELD says: "That these cases ought to be *liberally* construed, as they arise upon *remedial*

laws. But, that in the case of *Bidleson* v. *Whytel*, it appeared, that the determination had been otherwise; and we must not depart from settled determinations." In that case, the weight of authorities prevailed.

The only case besides this, which has been found by the counsel of the defendant, is a modern western case — *Williams* v. *Waldo*, 3 Scammon, 268. Judge BREEZE, delivering the opinion of the court, says: "A decree or judgment at law, is *not* a contract. Contracts are made between the willing—judgments and decrees are rendered against the unwilling, and they extinguish the contract." In 2 American Leading Cases, 744; in *Mills* v. *Durye*, the court say: "The true rule on this point, was stated very clearly in the recent case of *Napier* v. *Gedere*, 1 Speer's Equity, 214, where it was held, that 'the original cause of action here, was contract, but it is no longer so; it has passed into a judgment, and that it is the foundation of the action, and therefore not embraced in our statute; whatever may have been the original cause of action, it is merged in the judgment, as effectually so, as if a bond or other specialty had been given for a simple contract debt. It has assumed a new form, and a name not found in our statute.'" The same ground was taken by the Supreme Court of Pennsylvania, in *Colt's Estate*, 4 W. & S. 514, where it was decided, that a debt that had passed into a judgment in another state, is no longer a debt due by simple contract, and is entitled to a preference under a statute giving judgments a priority in the distribution of assets. See, also, *Eaton* v. *Smith*, 8 S. & R. 243; *Wilson* v. *Long*, 12 Ib. 58; *Zeigler* v. *Cram*, 13 Ib. 102; *Schaffer* v. *McNamee*, 13 Ib. 47.

The counsel also refer to the unreported case of *Reed* v. *Jamieson*, in the Supreme Court of Iowa, confirmed by the Supreme Court of the United States, in which it was held, that a judgment was not a contract. The counsel for the defendant insists, also, that this judgment is not a demand founded on contract, as required by section 1849 of the act: 1. Because the present plaintiffs are only assignees of the judgment; and 2. Because the act, by its first section, in the

words, "for the recovery of money," was intended to include all the causes of action of that nature. The words, "founded on contract," are words of specification and limitation, and apply only to demands founded on contract, used in a strict sense, else they are surplusage. The judgment of a court may be a debt, and the effect of it is, that the defendant is obliged to pay it. This liability may arise from the cause of action, which is merged; but, again, it may arise as a liability growing out of the judgment. In an action of assumpsit, the judgment is, that the defendant promised, and therefore, it is adjudged. In replevin, it is, that he is "guilty," and, therefore, the plaintiff shall recover. Does it, therefore, follow that the demands in both cases, because converted into a judgment, are founded on a contract? Blackstone defines a contract: "An executory contract, is an agreement of two or more persons, upon sufficient consideration, to do, or not to do, a particular thing." The Code Napoleon defines it: "An agreement, by which one or more persons bind themselves to one or more others, to give, to do, or not to do, something." C. J. MARSHALL defines it thus: "It is an agreement, in which a party undertakes to do, or not to do, a particular thing."

WOODWARD, J.—The errors assigned are: 1. In dismissing the attachment. 2. In sustaining the motion for the production of the paper mentioned in the statement, and rendering judgment against the plaintiffs, upon its non-production. Section 1846 of the Code provides, that, "in an action for the recovery of money, the plaintiff may cause property of the defendant" to be attached, upon filing an affidavit or petition therefor, stating some one of certain facts, one of which is, that the defendant is a non-resident of the state. By section 1849: "If the plaintiffs' demand is founded on contract, the petition must state that something is due," &c. By section 1850: "The amount thus sworn to, is intended as a guide to the sheriff," &c. By section 1851: "If the demand is not founded on contract, the original petition must be presented to some judge of the Supreme or District

Court, who shall make an allowance thereon of the amount in value of the property, that may be attached." The provisions of these sections were intended to draw the line between actions *ex contractu* and *ex delicto?*

In the act of February 16th, 1843 (Stat. 1843, 78), the language is, "that when any action founded on contract," is commenced, and section 3 says: "The said writ may also be issued in actions *ex delicto*, in cases where," &c. Here the distinction intended, is manifestly between actions *ex contractu* and *ex delicto;* and it was always so understood, and so practiced upon. Numerous attachments have been sued out in actions brought upon judgments recovered in this or other states, and no one has so far doubted the correctness of the proceeding, as to object to it upon this ground.

The Code does not recognize the common law, technical names of actions, nor, in this case, even the general classification of those upon contract, and those of tort, in express and technical terms; still the sense cannot be mistaken. The language of section 1849, is not "founded upon a contract," but is general, upon contract, making a class, whilst section 1851, in the words "not founded on contract," refers to the class of actions for torts. The sense of this, and that of the former law, are the same; intending, that if the cause of action were such as to furnish some definite criterion of amount, such as is found in what are commonly called debts, this should form the guide for the attachment. And this class furnishes another important element, also—the fair assurance that something is due; whilst, on the other hand, all of that class which rests in damages alone, purely and strictly as damages, and not at all as debts, and which are altogether uncertain and unfixed, until ascertained by a verdict and judgment, require a special allowance.

But when a judgment has been recovered for a tort, it then is fixed and certain. It is a debt, as much as if it were recovered upon a promise; and an action of debt, under the former practice, brought upon such a judgment, was an action *ex contractu.* It is so classed by all the writers. Who ever heard of an action of debt upon a judgment, called an ac-

tion *ex delicto?* And yet it must be that, if it be not *ex contractu,* for there are but these two general classes. And we do not look back, for this purpose, to see upon what the judgment was recovered.

It certainly was not necessary for the defendant, to labor to prove that a judgment is not a contract, in the narrow sense, and as synonymous with *agreement.* But that it is, in a broader sense, and as distinguished from a *tort,* see the authorities cited by the plaintiff's counsel. The only answer to be made to a part of defendant's argument, is by asking whether this is not an action for the recovery of money? whether under this judgment, there is not "an obligation existing to pay money?" whether the relation of debtor and creditor does not exist? and what can create it more effectually, than a judgment? It is true enough, that these qualities do not exist in, and this section cannot apply to, actions of trespass, trover, malicious prosecution, and case generally, and that there must be something more than the "inchoate right to claim damages." The action does not stand in these categories. There is a *judgment,* and thereby a *perfect* right. The counsel dwells too much on the original cause of action, and forgets his own argument, that it is merged in the judgment. There is no absurdity in supposing, that an attachment might be sued out in an action on a judgment recovered in trespass, although it might not in the original action. In conclusion, we feel clear that the intent of the Code, like that of our former laws, is to distinguish between those demands which are *ex delicto,* and totally uncertain and indefinite, and those which are classed as *ex contractu,* and contain in themselves, something specific as to the amount, and we think the court erred in quashing the attachment.

The next matter for consideration arises upon the defendant's motion, that the plaintiffs "be ruled to complete the record and proceedings, upon which this suit is brought, by filing a certified copy of the *exceptions,* upon which, as appears by the record, the Supreme Court of the state of Illinois, reversed the judgment obtained in the Circuit

Court;" which motion was sustained, and, the paper not being produced, the action was dismissed.

It may be doubted whether an affidavit is requisite, when the record shows the former existence of a paper; but we apprehend that it is necessary, when the record does not thus show it. By this record, it does not appear that such a paper existed. No bill of exceptions appears to have been taken, and still less does it appear *by the record*, upon what the Supreme Court reversed the judgment of the Circuit Court. But setting criticism aside, and assuming that the defendant aimed at the motion in Illinois, to set aside the verdict, the question is, had he a right to demand the paper, *at all events*? He says he could not know how to conduct his defence, " without knowing the reasons which influenced the Supreme Court of Illinois, in reversing the first decision of the Circuit Court in Jo Daviess county." That motion could not, with any certainty, give him those reasons. If he needed them, the *opinion* of the court was the only thing which would furnish them, and this he could obtain. We can see no reason why the motion should have been withdrawn, but we are at an equal loss to perceive, what right the defendant has to call for it, in this manner, or of what use it could be to him in his defence. The opinion of the Supreme Court is what he wanted, if he needed anything pertaining to that matter. But the weightier answer, lies in a different train of thought. Can a state of things be conceived, in which the defendant *here*, could plead *any matter* which might be contained in that motion, or those exceptions? He does not show any bearing which they may possibly have had, and the defendant must have some knowledge of their nature, at least. But it must be remembered, that this is an action brought upon a judgment recovered in another state. The defendant cannot make a defence of any matter, which he might have pleaded in the former suit. Whatever objection there was to the former verdict and judgment, went up to the Supreme Court of Illinois, and that judgment was reversed; and this action is brought upon a judgment recovered after that.

Again: may not the plaintiff bring his action upon an incomplete record, as, for instance, upon a transcript of the judgment only (*Latterett* v. *Cook*, 1 Iowa, 1); or upon so much of the record as to show only, that the court had jurisdiction of the person and matter, and that a judgment was rendered? It is much to be doubted, whether the defendant could compel him to produce the remainder of the record, or a copy of it. The defendant could plead any of the pleas permitted in such case, and thus, perhaps, compel the plaintiff to show the rest of the record, as a matter of evidence. Thus, the defendant could plead *nul tiel record;* or, perhaps, that the court had not jurisdiction of the person or matter; or, that defendant was not served, and did not appear; or, that the judgment was obtained by fraud; and thus he might render it necessary for the plaintiff to produce other parts, and even the whole, of the record. The plaintiff can, by pleading, be compelled to show enough to prove a valid judgment recovered; but we cannot see that he can, by motion, be obliged to produce any particular part of the record. And it would seem, that additional weight is given to this reasoning, in this case, in view of the fact, that the former court permitted the paper called for, to be withdrawn from the records, so that it is no longer a part of them. If there were error in this, it should have been corrected in the other jurisdiction. The court here cannot correct it. Neither can our court make any inference adverse to the plaintiff.

Upon the whole, we are of the opinion, that the District Court erred in sustaining this motion, and in dismissing the action. The judgment will, therefore, be reversed, and a writ of *procedendo* will issue.