BELLE SCHOOLEY, Appellant, v. EUGENE SCHOOLEY, Appellee;
CHICAGO & NORTHWESTERN RAILWAY COMPANY,
Garnishee.

**EXEMPTIONS:** Alimony Non-Collectible from Personal Earnings.
1  The personal earnings of a divorced husband, who has remarried and is the head of a family, etc., are exempt from execution on a judgment for alimony in favor of his former wife.

LADD, SALINGER, and STEVENS, JJ., dissent.

**WORDS AND PHRASES:** ''Debt.'' A judgment for alimony is a
2  debt.

LADD, SALINGER, and STEVENS, JJ., dissent.

*Appeal from Woodbury District Court.*—W. G. SEARS,
Judge.

OCTOBER 25, 1918.

THE opinion states the case.—*Affirmed.*

*Kass Bros.* and *Foster G. Iddings,* for appellant.

*George G. Yeaman, Sargent, Strong & Struble, James C. Davis,* and *George E. Hise,* for appellees.

WEAVER, J.—The plaintiff, Belle Schooley, and the defendant were formerly wife and husband. On January 9, 1912, in an action brought by the plaintiff against said defendant, and then pending in the district court of Woodbury County, a decree of divorce was entered. In the same proceeding, the plaintiff secured judgment against defendant for a stated sum as alimony, payable in installments during her life, or until she marry again. She has not, in fact, contracted any marriage since the divorce. On December 10, 1913, the defendant married another woman, with whom he has ever since lived and maintained family relations in Woodbury County. Certain installments of the judgment for alimony are past due and unpaid. For several years, the defendant has been, and still is, employed in the service of the Chicago & Northwestern Railway Company, at a stated salary, or wages, payable monthly. In August, 1914, plaintiff caused an execution to issue upon such judgment for alimony, under which writ the railway company was garnished, as a supposed debtor of the defendant, the purpose of such garnishment being to reach and subject to the payment of such judgment the wages earned by him in the company's service. Defendant appeared in such proceeding, and moved to discharge the garnishee, on the ground that his wages were exempt to him, as a married man and head of a family. On the hearing upon this motion, the court sustained the claim of exemption, because of his status as a married man and head of a family, and ordered the discharge of the garnishee. In August, 1916, plaintiff caused another execution to issue, and the railway company to be again garnished thereunder.

1. EXEMPTIONS:
alimony non-collectible from personal earnings.

The railway company answered, showing that, at the date of the garnishment, it was indebted to defendant in the sum of $166.91 for wages earned by him within the period of 90 days preceding. Again defendant appeared, and moved to discharge the garnishee upon the same ground of exemption. This motion was also sustained, and the garnishee ordered discharged; and from such order and judgment, this appeal has been taken.

The foregoing sufficiently indicates the one question presented for our consideration: May a divorced husband who has married again and thus becomes the head of a family avail himself of the exemption provided by Code Section 4011, against an execution issued upon a general judgment for alimony rendered in favor of his first wife?

Counsel for appellant take the negative of the proposition, and in support of their position, have filed a very well-prepared brief, marshalling the authorities on which they rely, and discussing very lucidly the principles which they believe to be applicable to the undisputed facts in this record. That some of the precedents cited do appear to hold substantially as counsel claim, is to be admitted; but that they should be accepted by us as controlling authority, we are not ready to concede. Taking the country over, there are perhaps no two states in which the exemption statutes are so nearly identical that the construction and effect given to one in one jurisdiction may be said to be satisfactory precedent for the construction and effect of another in another jurisdiction. Again, there is no uniform policy of the courts in general with respect to these laws. In some, they are construed and applied with great liberality in favor of the debtor and his family; while in others, the tendency is to the opposite extreme, and the debtor gets little which is not assured to him by the strict and technical letter of the statute. Exemptions being strictly creatures of the statute, the question when the right exists, and the

scope of such right, resolves itself, in final analysis, into one of construction of the legislative language; and in such matters, the courts of each state ordinarily adhere to their own views of the expressed legislative intent. Our exemption statute, Code Section 4008, first provides that, "if the debtor is a resident of the state and the head of a family, he may hold exempt from execution" certain specified items of personal property, varying, to some extent, as it shall appear that the debtor is a farmer, mechanic, lawyer, or teamster, etc. Code Sections 4009 and 4010 exempt pension money and homes bought with pension money. Section 4011 of the Code is as follows:

"The earnings of a debtor who is a resident of the state and the head of a family for his personal services, or those of his family, at any time within ninety days next preceding the levy, are exempt from liability for debt."

In the case before us, the divorce had the effect to restore the husband and wife to the status of unmarried persons, with full and unrestricted right to each to marry again, the same as if their marriage relation had never existed. So long as he retained that status, defendant's wages were, of course, subject to garnishment, because he was not one of the protected class; for, though he was a resident of the state, he was not the head of a family. But when he married, as he legally might, a woman having the legal right to take him as her husband, and established their home in the county, he became, literally and undisputably, the head of a family and a resident of the state; and his right to the exemption of his wages is too clear for argument, unless he is to be excluded therefrom upon the theory advanced by counsel, to which we shall now give attention.

The point so made is that the language of the statute is that "earnings of a debtor who is a resident of the state and the head of a family for his personal services   *   *   *

**2. WORDS AND PHRASES: "debt."** are exempt from liability for *debt;*" and it is argued that this does not include exemption from liability for payment of a judgment for alimony, because an allowance of alimony is not, in a legal sense, a "debt." Cases are cited which do draw a distinction between a claim for alimony and debt; but very few will be found holding that a claim for alimony which has been reduced to final judgment is not the debt of him against whom it is rendered. On the contrary, the great weight of authority is decidedly the other way. Speaking of the entry of a decree for alimony, the Supreme Court of the United States says, "When this is done, it becomes a debt of record." *Barber v. Barber,* 21 How. (U. S.) 582, 595. Speaking of absolute and limited divorces, the Massachusetts court says, "The judgment for alimony in either case creates a debt of record in favor of the wife." *Chase v. Chase,* 105 Mass. 385, 388. A debt is something due or payable from one person to another, and may be created by contract or judgment. *Summit Silk Co. v. Kinston Spinning Co.,* 154 N. C. 421; *Arbaugh v. Shockney,* 34 Ind. App. 268 (72 N. E. 668, 669) ; *Mayor, etc., v. Hurt,* 140 Ala. 394; *Lothrop v. Parke,* 202 Mass. 104; *In re Kinsolving,* 135 Mo. App. 631 (116 S. W. 1071) ; *In re Van Orden,* 96 Fed. 86, 88; *Mertz v. Berry,* 101 Mich. 32. Our own cases are quite in harmony with this view. See *Whitcomb v. Whitcomb,* 52 Iowa 715, 718. In this last cited case, the wife obtained a general judgment for alimony, and afterwards sought to enforce it against the husband's homestead. This was denied, the court saying:

"The judgment is but a debt, and the plaintiff thereunder is not entitled to precedence, or greater rights than would be the holder of any other judgment."

See, also, *Byers v. Byers,* 21 Iowa 268. Indeed, we think we need look no further than to the statute itself to see that the words "debt" and "debtor" are used in their

more general and less technical sense, and that the statute provides for exemption from execution issued upon every and any general judgment against the head of a family for the payment of money. In Code Section 4008, which is the section providing the general list of exemptions, the word "debtor" is repeatedly employed. The exemptions are expressly made in favor of the "debtor" if a resident of the state. It is the "debtor's" wearing apparel, trunks, shotgun, family Bible, portraits, church pew, burial lot, tools, implements, team, etc., which are secured from seizure under execution or attachment; and, if the appellant's theory be correct, that a judgment rendered against a litigant upon any other claim than that of a debt by contract, in its restricted technical sense, is not a debt, within the meaning of this statute, then the door is opened to stripping the impoverished debtor and his family of every earthly possession, save, perhaps, the clothes upon their backs, in favor of any person who may happen to recover judgment against him upon any cause of action not originating in contract. We feel very sure that such is not the legislative intent. One against whom a judgment for the payment of money is rendered is universally known and spoken of as a "judgment debtor," and the claim against him is recognized as a "judgment debt." It is, to use the language of the cases already cited, a "debt of record," or, as called by some, "a judicial debt of record." It is a debt—a binding obligation to pay a stated sum of money, fixed by judicial determination. If, before judgment, the plaintiff's claim was unliquidated, and the obligation to pay was imperfect, that condition ceased with the judgment entry. What was before uncertain is now certain. A writ of execution is nothing less or more than a process by which such debt may be enforced against the judgment debtor's property, if any he has, which is subject to seizure; and property so levied upon is taken for that purpose: i. e., for the payment of his

debt. The protection against such seizure which the statute of exemption provides is in favor of residents of the state who are married, and are heads of families. Mr. Bouvier says that debts arise or are proved by matters of record (as judgment debts), by bonds, and by simple contract.

"The word 'debt' is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent; and in its popular sense includes all that is due to a man under any form of obligation or promise." *Gray v. Bennett*, 44 Mass. 522, 526.

Debt means a liability to pay a sum certain; and it makes no difference how the liability arises, whether by contract or whether it be imposed by law without contract. *Rhodes v. O'Farrell*, 2 Nev. 60, 61. See, also, Webster's International Dictionary; Rap. & L. Law Dictionary. The Constitution of North Carolina provides for the exemption of homesteads from sale under execution for any debt; and this has been held to include exemption from levy under execution on a judgment rendered in an action *ex delicto*. *Dellinger v. Tweed*, 66 N. C. 206, 210. The proposition would also seem to have been finally settled for this court as far back as the case of *Johnson & Stevens v. Butler*, 2 Iowa 535, 545. There, the plaintiff sued at law upon a judgment rendered in Illinois in an action *ex delicto*. The suit was brought and an attachment sued out in this state on the theory that the action on the judgment was *ex contractu*. The trial court ruled, in effect, that the action upon the judgment must be treated as partaking of the nature of the original action: that is, *ex delicto*. This court overruled the trial court, saying:

"But when a judgment has been recovered for tort, it then becomes fixed and certain. It is a debt, as much as if it were recovered upon a promise."

The same proposition is reiterated in *Warner v. Cam-*

*mack,* 37 Iowa 642. Other authorities of like character could be multiplied quite indefinitely. If the plaintiff were now standing in court, asking an allowance of alimony, it could well be admitted that her action in that respect was not *ex contractu;* or rather, that such claim is not a debt, in the restricted meaning of that word. And yet marriage is a civil contract between the parties, a contract which implies an obligation for support; and it is in recognition of such implied contract that alimony is allowed. It remains unliquidated, however, until the court has fixed it by judgment; but thereafter, it would seem that it must be regarded as a debt by contract, as well as by judgment.

Much is said in argument of the injustice of such results in cases like the one at bar, and that defendant ought not to be allowed to clothe himself with such right of exemption by marrying again. If it should be admitted that the statute could well have been made to accord with appellant's contention of absolute justice, it is sufficient to say that it was not so made. The marriage relations of the parties were severed at the option of the plaintiff. it was in accordance with her prayer that the divorce was granted, and she was given her freedom from the bonds of matrimony, with a general judgment for a specified amount of alimony. She ceased to be a member of his family, and the only relation thereafter existing between them was that of judgment creditor and judgment debtor; and, as a judgment creditor, she became vested with the same rights to enforce collection of her claim which the law gives to all other creditors of that class. It is not to be overlooked that the exemption laws are not intended simply for the protection of the debtor, but primarily for the protection and support of his family; and to that end, the statute will be liberally construed. The defendant is the head of a family of which the plaintiff is not a member. The woman who married him is his lawful wife; and it would be a law of at least doubt-

ful justice which would deprive her of the protection of the statute for the benefit of the former wife, who, in accepting a general judgment in her favor, must be held to have impliedly consented to take it subject to all legal limitations upon her right to enforce it. The statute, so far, at least, as relates to the exemption of the debtor's earnings, is too clear and certain to permit of construction. To repeat, the defendant is a resident of the state, a married man, and the head of a family, and is, therefore, within the literal description of the exempt class. The statute provides no exception from its terms. The earnings garnished were within the ninety-day period. The trial court could not have done otherwise than it did, without repealing the statute by judicial construction, or engrafting thereon an exception for which the legislative language affords no foundation whatever.

The judgment appealed from is—*Affirmed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.

SALINGER, J. (dissenting).—I. In my opinion, the fact that the statute gives exemption to no one but a "debtor," does not decide this case. That none but debtors have an exemption is a limitation upon who may claim exemption, rather than a declaration that all debtors may claim it. I think that all accomplished by limiting exemption rights to "debtors," is that, if an alimony judgment is not a "debt," there is no exemption as to such a judgment; and that using the word "debtor" does not settle whether such judgment is or is not a debt. If it is not a debt, then, as exemptions bar nothing but the collection of "debt," there is here no exemption.

Concede it is a general rule that a judgment is "a debt of record," no matter what the basis of the judgment is, yet such concession does not more than meet one of the arguments of appellant: to wit, that "debt" is created by con-

tract, only. But though a judgment is ordinarily "a debt of record," without reference to its basis, the courts may look into the record behind the judgment to ascertain whether it is an allowance of alimony. *Wetmore v. Markoe,* 196 U. S. 68 (25 Sup. Ct. Rep. 172, at 174) ; *Boynton v. Ball,* 121 U. S. 457 (7 Sup. Ct. Rep. 981). It is permitted to show that the judgment itself lacks some essential attri- bute of "debt." One such attribute is certainty as to amount and maturity. The order at bar provides a month- ly allowance. The total and the maturity depend upon how long appellant shall live, when, if at all, she remarry, and how long the minor child shall live. Thus, both amount and maturity are uncertain. It is held, in *Dunbar v. Dun- bar,* 190 U. S. 340 (23 Sup. Ct. Rep. 757), that a discharge in bankruptcy is no bar to enforcing an agreement to pay an annuity to a divorced wife during her life, or until she remarries, because there is a substantial impossibility of estimating the value of the contingency of a remarriage. Unlike most judgments, certainty is lacking because the ali- mony order remains in court, and is subject to being can- celled or changed at any time. *Wetmore v. Markoe,* 196 U. S. 68 (25 Sup. Ct. Rep. 172) ; *Barclay v. Barclay,* 184 Ill. 375 (56 N. E. 636) ; *Audubon v. Shufeldt,* 181 U. S. 575 (21 Sup. Ct. Rep. 735) ; *Andrew v. Andrew,* 62 Vt. 495 (20 Atl. 817, 819). In the *Audubon* case, the Supreme Court of the United States approves *Alexander · v. Alexander,* 13 App. D. C. 334, 345 (45 L. R. A. 806), in holding that:

"The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction."

## 1a

Passing that there is no debt because the requisite cer- tainty is lacking, I next contend that the treatment of ali-

mony allowances by the courts demonstrates that such ,an
allowance is not a "debt," because:

a.   It is universally held that such a judgment is not ·
a debt, within prohibitions of imprisonment for debt.
*Bronk v. State,* 43 Fla. 461 (31 So. 248, 99 Am. St. Rep.
119) ; *Barclay v. Barclay,* 184 Ill. 375 (56 N. E. 821) ; *Ex
parte Grace,* 12 Iowa 208; Note Am. Ann. Cases, 1913E,
1087, and cases; *Bates v. Bates,* 74 Ga. 105; *Mahoney v.
Mahoney,* 59 Minn. 347 (61 N. W. 334) ; *Lockwood v. Krum,*
34 Ohio St. 1.   The allowance may be enforced by proceed-
ings in contempt, and the recalcitrant punished by fine and
imprisonment.   In *Foster v. Foster,* 130 Mass. 189, the
court held that "a husband may be lawfully arrested on an
execution issued upon a decree for alimony."   In England,
"the court may require him to give security for its payment,"
or "direct him to make a transfer of money to a trustee for
the convenient payment to the wife."   Ringrose on Marriage
& Divorce, page 26.   Of course, no court can do this in giv-
ing a naked judgment for debt or in enforcement of such a
judgment.

b.   Such a judgment is not a provable debt, within the
meaning of the Bankruptcy Act.   1 Loveland on Bank-
ruptcy, 594 to 596, and 612 to 614; 5 Cyc. 397, and cases;
*Audubon v. Shufeldt,* 181 U. S. 575; *Dunbar v. Dunbar,* 190
U. S. 340;   8 Am. & Eng. Encyc. of Law (2d Ed.) 995, 999;
Bankruptcy Act, 1883; *Wetmore v. Markoe,* 196 U. S. 68 (2
Ann. Cas. 265, 25 Sup. Ct. Rep. 172, 49 L. Ed. 890).

c.   Though the courts will not subject the homestead
to an ordinary debt, they do subject it to the satisfaction of
an allowance for alimony.   *Winter v. Winter,* 95 Neb. 335
(145 N. W. 709, 710) ; *Blankenship v. Blankenship,* 19 Kan.
159; *Daniels v. Morris,* 54 Iowa 369, 371 (distinguishing
*Byers v. Byers,* 21 Iowa 268).

d.   In *Tully v. Tully,* 159 Mass. 91 (34 N. E. 79), pen-
sion money was subjected to an alimony judgment, though

the Federal exemption statute was invoked. Why; with reference to exemptions, pension money differs from earnings, is not readily perceivable.

e. The authorities hold enforcement of such award is not the collecting of a debt, but a sequestration, akin to specific performance decree and to partition; that, in analogy to marriage settlements, alimony is a setting aside of part of the joint estate for the purpose of avoiding the family's becoming a public charge. *Daniels v. Morris,* 54 Iowa 369, 371; *Winter v. Winter,* 95 Neb. 335 (145 N. W. 709, 710); *Cochran v. Cochran,* 42 Neb. 612 (60 N. W. 942); *Anderson v. Norvell-Shapleigh Hdw. Co.,* 134 Mo. App. 188 (113 S. W. 733); *Earle v. Earle,* 27 Neb. 277 (43 N. W. 118).

This categorical formulation, it seems to me, conclusively demonstrates that a judgment ordering a payment for the support of wife and child neither is, nor is it based upon, a "debt.", But the reasoning of the cases cited is more convincing than any summary of their holdings.

## 1b

The argument that the obligation to support wife and child "is of the nature of an ordinary indebtedness, and that decree ordering such payment in no way differs from an ordinary decree for the payment of money," is said, in *Andrew v. Andrew,* 62 Vt. 495 (20 Atl. 817, 819), to be an erroneous view. In *Barclay v. Barclay,* 184 Ill. 375 (56 N. E. 636), and *Wightman v. Wightman,* 45 Ill. 167, it is held that the decree may be enforced by attachment for contempt, because the allowance is not a debt; and in the *Wightman* case, it is said that this is so because prohibition of imprisonment for debt refers to an obligation founded upon contract. It is ruled in *Ex parte Perkins,* 18 Cal. 60, that this allowance is not technically a debt; that the husband owes the wife no specific amount of money; and that the judgment, instead of evidencing a debt, is the making

definite an imperfect obligation, that of support—is a compelling the husband to perform a duty. And *Adams v. Adams*, 80 N. J. Eq. 175 (83 Atl. 190), declares that these holdings are sustained by the great weight of authority; and upon very full investigation, I have found no dissent, except in Nebraska and Missouri.

The enforcement of such a decree or award may not be had at law—is not suable at law; and resort must be had to the chancellor to enforce the award. *Audubon v. Shufeldt*, 181 U. S. 575 (21 Sup. Ct. Rep. 735) ; *Andrew v. Andrew*, 62 Vt. 495 (20 Atl. 817) ; *Nary v. Braley*, 41 Vt. 180; *Allen v. Allen*, 100 Mass. 373, at 374; *Wetmore's* case, 196 U. S. 68 (25 Sup. Ct. Rep. 172). Its enforcement is in the nature of a decree compelling specific performance of the obligation of the husband to support wife and family.

"Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife." *Audubon v. Shufeldt*, 181 U. S. 575 (21 Sup. Ct. Rep. 735), approved in the *Wetmore* case, 196 U. S. 68 (25 Sup. Ct. Rep. 172).

It is a penalty imposed for a failure to perform a duty. *Barclay v. Barclay*, 184 Ill. 375 (56 N. E. 636). The policy of law imposed this obligation upon the husband. *Wetmore v. Markoe*, 196 U. S. 68 (25 Sup. Ct. Rep. 172). To the same effect is *Romaine v. Chauncey*, 129 N. Y. 566 (29 N. E. 826). In reasoning why such an award is not within the prohibition of imprisonment for debt, it was said, in *State v. Cook*, 66 Ohio St. 566 (64 N. E. 567) :

"It seems manifest that, so far as the obligation of the husband enters into the consideration, and affords the basis for the court's action, it is not a debt, in the sense of a pecuniary obligation; it arises from a duty which the husband owes as well to the public as to the wife, but it is not upon any specific contract. * * * The liability originates

in the wrongful act of the husband, against the consequences of which the public, as well as the wife, has the right to be protected."

The decree is an admeasurement by which the court makes specific a general duty to support, created by the marital relation and by public policy. *Audubon v. Shufeldt*, 181 U. S. 575 (21 Sup. Ct. Rep. 735) ; *Daniels v. Lindley*, 44 Iowa 567; *Romaine v. Chauncey*, 129 N. Y. 566 (29 N. E. 826, 26 Am. St. Rep. 544, 14 L. R. A. 712) ; *Fickel v. Granger*, 83 Ohio St. 101 (93 N. E. 527, 32 L. R. A. [N. S.] 270) ; *State v. Cook*, 66 Ohio St. 566 (64 N. E. 567, 58 L. R. A. 625) ; *Noyes v. Hubbard*, 64 Vt. 302 (23 Atl. 727). And it is held, in *Winter v. Winter*, 95 Neb. 335 (145 N. W. 709, 712), that a court of equity will compel the performance of marriage obligations.

Another reason for holding that an alimony allowance is not a debt, is, in essence, that the judgment of the court is a sequestration and division of the property, made on a consideration of the circumstances of the family. See *Daniels v. Morris*, 54 Iowa 369. It is setting aside money of the marital partnership,. to be devoted to the support of the wife. *Ex parte Perkins*, 18 Cal. 60. The allowance bears some analogy to marriage settlements. It is a sequestration, rather than a judicial order, making the husband the debtor of his wife and children. According to *Cochran v. Cochran*, 42 Neb. 612 (60 N. W. 942), the enforcement of the order is an invoking of the general equity powers of the court to appropriate property of a nonresident within the jurisdiction to the maintenance of the wife and child. *Mahoney v. Mahoney*, 59 Minn. 347 (61 N. W. 334), holds that an allowance of alimony to the wife out of the property of the husband is a sequestration, and that, "in providing for the division and adjustment of property in case of divorce, the law proceeds upon the theory that the wife has an interest in the property of her husband;" and that there-

from it follows that exemptions have no place against en-
forcement of the allowance.  And an "Exemption Statute
has no more application than it would have in an ordinary
suit for partition."  It is said, in *State v. Cook*, 66 Ohio St.
566 (64 N. E. 567) :

"Beyond this, the provision for alimony is an allow-
ance.  It is in the nature of a partition.  Recognizing the
right of the wife to participate in the accumulations which
are presumably the result of their joint efforts and joint
economies.  *  *  * "

The wife is awarded a just, equitable proportion of the
whole, and this allowance may be. in money, payable in
gross, or in future instalments.  In modern practice, the
allowance is one made to a woman on divorce, for support
out of her husband's estate.  *Anderson v. Norvell-Shapleigh
Hdw. Co.*, 134 Mo. App. 188 (113 S. W. 733).  The case of
*Wightman v. Wightman*, 45 Ill. 167, puts it that, if the
defendant remain contumacious, the court may, in addition
to attachment for contempt, sequestrate his real and per-
sonal property, as a means of enforcing performance of the
decree.  Finally, it is said in *Audubon v. Shufeldt*, 181 U. S.
575 (21 Sup. Ct. Rep. 735, 736), approved in the *Wetmore*
case, that permanent alimony is regarded rather as a por-
tion of the husband's estate, to which the wife is equitably
entitled, than as strictly a debt; that alimony, from time
to time, may be regarded as a portion of his current income
or earnings.

After the divorce, it still remains the duty of the
father to provide for his children; and that they are given
in the custody of the mother does not relieve him from that
duty.  Therefore, the court is authorized to decree to the
wife so much of the estate of the husband, or such sum of
money paid in lieu thereof, as the court deems just.  It is
an assignment of property which the court undertakes to
put her in possession of, and the money is to be paid her in

lieu of a part of his estate. The decree is, in its nature, specific. *Andrew v. Andrew,* 62 Vt. 495 (20 Atl. 817). It is not a debt, but is an allotment of a part or proportion of his estate vested by the court and appropriated to her, and is similar to an ordinary decree for specific performance. *Lyon v. Lyon,* 21 Conn. 184, 185. Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as being, in strictness, a debt. *Audubon v. Shufeldt,* 181 U. S. 575 (21 Sup. Ct. Rep. 735).

"The court does not decree alimony as a debt to the wife, or as damages to be paid to her by her late husband, but as a part of the estate standing in his name, in which she has a right to share, fixed by the court in its discretion and thus appropriated to her, and to which she thereupon becomes legally entitled." *State v. Cook,* 66 Ohio St. 566 (64 N. E. 567).

And all this does not mean, in strictness, a severing allotment or partition of property at the time decree is passed. Alimony from time to time may be regarded as a portion of the husband's current income or earnings. *Audubon v. Shufeldt,* 181 U. S. 575 (21 Sup. Ct. Rep. 735). In other words, the future income and earnings are impressed with an equitable lien, and subject to future severance. This, no doubt, is one of the reasons upon which the Massachusetts court held pension money to be subject to an alimony judgment.

If a judgment which plaintiff has is not a debt, then her former husband is not her debtor, and for that reason can plead no exemption statute. If it be, perchance, a debt in some aspects, and the means to satisfy such debt have been alloted, sequestrated, or have had a lien impressed upon them by the court of equity, no exemption statute can make those means a free asset, and no new wife or family can have a part or lot in what is the property of another.

II.  The next question is whether, though an alimony judgment be a debt, the exemption statute should not be so construed as not to apply to such a debt.  The answer in- volves the familiar rule of construction that no statute should be given a literal interpretation if such interpreta- tion will lead to absurdity, or to consequences that the leg- islature could not, in reason, have intended, unless the words used clearly indicate that the legislature desires to discard reason and public policy.

The so-called debt arises from a duty which the hus- band owes to the public, as well as to the wife; and the liability originates in the wrongful act of the husband, against the consequences of which the public, as well as the wife, has the right to be protected.  *State v. Cook,* 66 Ohio St. 566 (64 N. E. 567).  And it is said, in *Murray v. Murray,* 84 Ala. 363 (4 So. 239), that the duty to provide maintenance for the wife is much more binding than mere contractual obligation, and is not only a duty to her, but is, as well, an obligation to protect the public against being burdened with a charge.  It is the policy of exemption statutes to protect the family as a whole; to avoid the mak- ing of any member a public charge.  *Murray v. Murray,* 84 Ala. 363 (4 So. 239) ; *Mahoney v. Mahoney,* 59 Minn. 347 (61 N. W. 334).  It is unquestionable that the same policy underlies the providing of alimony; and in *Winter v. Winter,* 95 Neb. 335 (145 N. W. 709, 712), we find the per- tinent inquiry why exemption statutes should not be con- strued to be a protection of the family against the husband, as well as a protection of his property against creditors, and a declaration that the rights of the holder of the ali- mony decree rest on the reasoning which permits the home- stead to be sold for the support of the family, though a creditor may not sell it.  We held, in *Daniels v. Morris,* 54 Iowa 369, that the homestead might be sold to satisfy an allowance of alimony, and put it upon the ground that the

homestead is not for the husband alone, but for the benefit of the family. That is the ground upon which *Winter v. Winter*, 95 Neb. 335 (145 N. W. 709, 712), proceeds. And it is said, in *Best v. Zutavern*, 53 Neb. 604 (74 N. W. 64), that "the homestead law is a family shield and cannot be employed by either spouse to wrong the other." As was said in the *Wetmore* case, 196 U. S. 68 (25 Sup. Ct. Rep. 172) :

"The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to secure."

And nothing in *Whitcomb v. Whitcomb*, 52 Iowa 715, or *Byers v. Byers*, 21 Iowa 268, which the *Whitcomb* case distinguishes, is in conflict with any of this. In the *Whitcomb* case, the husband had obtained a divorce, and in that proceeding, the wife was allowed alimony. She had the decree of divorce set aside. So, by her own act, she restored the husband to the status of head of the family. Upon the very reasoning that the homestead is not for the benefit of either husband or wife alone, it had to be ruled that one might not take the homestead from the other so long as they remained married to each other,—and for all that appears in the record, the husband was occupying this homestead with the children of the parties; and in the *Byers* case, in which the wife had obtained the divorce, she was not permitted to seize the homestead, because the husband occupied it with their children.

The attitude of the law to the decree for alimony is further made plain by holdings that such decree makes its owner a creditor only as against an attempt to take property from the family. *Andrew v. Andrew,* 62 Vt. 495 (20 Atl. 817, at 819) ; *Livermore v. Boutelle,* 11 Gray (Mass.) 217.

In *Romaine v. Chauncey*, 129 N. Y. 566 (29 N. E. 826), it
is held that a court of equity will not lend its aid to sub-
ject an appropriation of alimony to debts contracted by the
wife before the decree allowing alimony was entered. In
*Tully v. Tully*, 159 Mass. 91 (34 N. E. 79), it was held,
against a plea of the Federal exemption statute, that pen-
sion money could be subjected to an alimony judgment be-
cause such money "is designed in part to enable the pen-
sioner to support his wife and family," and that, therefore,
the statute "should not be strained to enable him to avoid
this duty." We should not strain the exemption statutes,
which were enacted to effectuate public policy, into destroy-
ing that very policy, merely because the statute attaches no
express limitations to the use of the word "debtor." When-
ever it fairly appears that a literal construction will defeat
what is confessedly the legislative policy, then the word
should yield to the spirit. It is universally held that well-
known public policy should not thus be made ineffective, un-
less the language of the statute compels a holding that the
legislature intended to defeat legislative purpose, and to
abandon sound public policy.

### 2a

If our statute expressly declared, as is done in some
other jurisdictions, that the allowance of alimony was or
was not a debt, within the meaning of the statute, there
would be nothing to construe. We have no such definite-
ness. The most that can be claimed is that, since the word
"debtor" is used without limitation in terms, a literal in-
terpretation gives an exemption against any and all debts.
But the statute is certainly not broader than if it said the
earnings should be exempt from "any debt." If that were
the language used, it would not follow that there must be a
literal construction. Courts may even reject clauses and
substitute one word for another in a will, provided that

is "imperatively demanded in order to carry out the intention of the testator." *Taylor v. Taylor,* 118 Iowa 407, at 410. They may "arbitrarily expunge or alter words in a will," if it be necessary to carry out such intention. *Griffith v. Woodward,* 1 Yeates (Pa.) 316, 318. The "rule of reason" may be applied in dealing even with words like "any person." See *Hodgkin v. Atlantic & Pac. R. Co.,* 5 Abb. Prac. N. S. (N. Y.) 73, 74; *State v. Smiley,* 65 Kan. 240 (69 Pac. 199). And it may not readily be perceived why "any debt" is more controlling or all-including than "any person." It has been decided over and again that the words "any person" shall not be literally construed, if so doing would result in absurdity or in contravention of conceded public policy. A four-year-old child is "a person." *Sutton v. State,* 122 Ga. 158 (50 S. E. 60, 61). In the statute prohibiting and punishing rape, there is no limitation of who may commit it. But it would not be contended that a four-year-old child or the husband of complainant is within the statute. We have a statute prohibiting the resort by any person for the purposes of "prostitution." But we held, in *State v. Gardner,* 174 Iowa 748, that, since females only may be prostitutes, a male cannot resort for the purpose of "prostitution." Though an indictment for seduction did not disclose the sex of the alleged seducer, we held, in *State v. Olson,* 108 Iowa 667, at 668, that, in reason, the charge must be construed to refer to a male person. The Constitution of the United States makes "any person or persons" liable to punishment for misprision of treason; and it was held that, though these words are broad enough to include every human being, they must necessarily be confined to a person or persons owing allegiance to the United States. The statute invalidates "every disposition of property" which suspends the absolute power of controlling the same for a longer period than, etc. Nothing could be more all-inclusive than the words "every disposition of property." But we

held, in *In re Estate of Cleven,* 161 Iowa 289, at 295, and in *Wilson v. First Nat. Bank,* 164 Iowa 402, that this statute did not apply to charities, because "The rule of public policy which forbids estates to be indefinitely inalienable in the hands of individuals does not apply to charities," for the reason that charities are established for lasting and permanent benefit. In *State v. Grimmell,* 116 Iowa 596, we had to deal with a statute which, in terms, makes *every* communication to a physician privileged. But we declared that the statute does not shield a physician charged with murder by abortion. No such limitation can be found in the statute, so far as words go. But we restricted the sweeping words because we would not impute to the legislature the purpose of shielding criminals. Cases too numerous for citation hold that, though statutes permit "any person" to recover for injury suffered by the act of some corporation, such as a carrier, that one who is himself in fault, or, in the absence of a statute abolishing the fellow-servant rule, is injured by the act of a fellow servant, may yet not recover. See *Dowell v. Vicksburg & M. R. Co.,* 61 Miss. 519, 529; *Carle v. Bangor & P. Canal & R. Co.,* 43 Me. 269, 271; *Sala v. Chicago, R. I. & P. R. Co.,* 85 Iowa 679; *Miller v. Coffin,* 19 R. I. 164 (36 Atl. 6); *Sullivan v. Missouri Pac. R. Co.,* 97 Mo. 113 (10 S. W. 852); *Atchison, T. & S. F. R. Co. v. Farrow,* 6 Colo. 498, 505; *Lutz v. Atlantic & Pac. R. Co.,* 6 N. M. 496 (30 Pac. 913); *Proctor v. Hannibal & St. J. R. Co.,* 64 Mo. 112, 122; *Connor v. Chicago, R. I. & P. R. Co.,* 59 Mo. 285, 292. Such holdings are put upon the ground that statutes will not be strained to overturn acknowledged principles of justice and sound public policy, unless the words of the statute indicate that the legislature desires to abandon such principles and such policy. See *Dixon v. Telegraph Co.* (C. C. A.) 68 Fed. 631; *Jewell v. Board of Trustees,* 113 Iowa 47, 49.

In my opinion, the case at bar may be decided for the

appellant with much less strain than was required to give reasonable meaning to such words as "any person."

It is said in the *Wetmore* case:

"Unless positively required by direct enactment, the court should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children."

And *Dunbar v. Dunbar,* 190 U. S. 340 (23 Sup. Ct. Rep. 757), approved in the *Wetmore* case, declares:

"We think it was not the intention of Congress, in passing a bankruptcy act, to provide for the release of the father from his obligation to support his children by his discharge in bankruptcy;" and that, "as the defendant would still remain liable for the support of his minor children, even if discharged from this contract under the act, and he would remain liable for past support, why should it be held that Congress intended that such a contract, to do what the law enjoins upon him as a duty, should be released? There is no language in the act which plainly so provides, and we ought not to infer it."

The *Dunbar* case approves the holding of *In re Hubbard,* 98 Fed. 710, which says, with reference to a decree providing for the maintenance of a bastard, that "the bankruptcy act was passed to relieve persons bringing themselves within its provisions from the incubus of hopeless indebtedness; but it was not intended to nor does it subvert the higher rule, which casts upon a parent the care and maintenance of his offspring,"—a duty whose performance is required by the welfare of the state, as also every principle of law, statutory, natural, and divine.

The divorce, with its incidental allowance of alimony, simply continues the duty of the husband beyond the decree, without changing its nature. *Romaine v. Chauncey,*

129 N. Y. 566 (29 N. E. 826, 14 L. R. A. 712); *Fickel v. Granger*, 83 Ohio St. 101 (32 L. R. A. [N. S.] 270, 93 N. E. 527); *Lockwood v. Krum*, 34 Ohio St. 1; *State v. Cook*, 66 Ohio St. 566 (64 N. E. 567, 58 L. R. A. 625). But assume that divorce terminates all relations to the former wife, is not the father, under the underlying reason and purpose of exemption laws, and with reference to the children, as much "the head of the family" as he ever was? Is not every duty cast upon him? With reference to those children, is not every duty which led to the making of exemption laws still his duty? Those laws were made so that the father could avoid the making of public charges out of his children. Does the divorce end the desire of the law that children shall not be made paupers as long as the father can earn money? For that matter, as has been seen, it is universally held that the divorce does not terminate the duty to support the wife, to the extent of paying the alimony which the court has provided for her; and it is self-evident that the divorce does not terminate the relation of parent and child. If this be sound reasoning, the most that can be said is that, if the man remarry, and thereby creates a double strain upon his resources, and if this does him an injury, it is self-invited, because the new marriage was voluntarily entered into, in the light of the knowledge that a double burden would result. See *Anderson v. Norvell-Shapleigh Hdw. Co.*, 134 Mo. App. 188 (113 S. W. 734), in which case it is said that the hardship of being required, on remarrying after divorce and award of alimony, to support two families, is immaterial on a judicial construction of the statute, because the injury is self-invited. In *Winter v. Winter*, 95 Neb. 335 (145 N. W. 709, at 712), there was failure to pay a monthly allowance, and it is said that, "if the defendant can create a condition with which to successfully defend himself against the decree of the court, then it may well be doubted whether the decree is of any use;" and further

said that no mere rule of law interposed by defendant will permit a derelict husband to escape the burden of supporting his wife and children; that, when the legislature passed statute providing for exemptions for the "head of a family," it certainly did not contemplate that a man could fail in duty to provide for wife and children, in defiance of the decree of the court; and that "the law ought not to permit him to construct a shield that will protect him in his marital and domestic recklessness. By getting married again, he ought not to be permitted to relieve himself from the burden of supporting the child that he caused to come into the world;" and that the duty of the husband to comply with that decree is as strong as "the duty which binds him to the wife in Omaha," who is of a class concerning which it is said, in *Best v. Zutavern*, 53 Neb. 604 (74 N. W. 64), that the judgment for alimony is an advance warning to. Against an assertion by a divorced husband of an exemption in a homestead in resistance of a judgment for alimony, it was said, in *Cochran v. Cochran*, 42 Neb. 612 (60 N. W. 942), that the divorce laws may not be used to enable designing husbands to escape the performance of their marriage contracts.

Whosoever goes part way must be prepared to go all the way. If divorce and remarriage bar enforcement of the alimony judgment, then it is immaterial which party gets the divorce, and immaterial that it was granted for the misconduct of the party who now pleads the exemption. It follows that a party to the marriage is, for all practical purposes, at liberty to relieve himself at any time from the duty of supporting either wife or children. He may indulge in misconduct so gross as to compel the wife to obtain a divorce, and so conduct himself for the very purpose of being able to remarry, and use the second marriage to make his former wife and his children public charges. Whosoever asserts that this is the right construction of our

exemption statute must be prepared to maintain that, if a man has wife and children who will be left utterly unsupported, unless he supports them, marry a rich wife, who remains childless and supports him, he may spend those earnings in riotous living, but the public must support those whom he has brought into the world. I am firmly persuaded that no such thing was intended by using the word "debtor," without more, and am abidingly convinced that here there should be a reversal, because: (1) The allowance for alimony is not a debt at all, and therefore there is no exemption that can be asserted against it; and (2) if it be conceded that the allowance is, in some senses, a debt, it was not the legislative intent to apply the exemption statute to it.

LADD and STEVENS, JJ., concur in this dissent.