LAURA BLANCHE WINTER, APPELLANT, V. LEONARD WINTER,
APPELLEE.

FILED FEBRUARY 13, 1914. No. 17,390.

Divorce: ALIMONY: REMARRIAGE: EXEMPTION. Where a decree of di-
    vorce and for the payment of alimony is granted the wife, the
    derelict husband cannot defeat the collection of alimony by re-
    marrying and claiming the benefit of the exemption law.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. *Reversed.*

*M. O. Cunningham,* for appellant.

*J. L. Kaley, contra.*

HAMER, J.

The appellant, Laura Blanche Winter, obtained a de-
cree of divorce from the appellee, Leonard Winter, in the
district court for Lancaster county at the October term,
1909. The care, custody and control of Leota Winter,
their little child, was given by the district court to the
plaintiff.

A default was taken on the 4th day of October, 1909,
and subsequently the plaintiff proved up, and the court
found generally in favor of the plaintiff and against the
defendant; also, that due notice of the filing and pendency
of the petition was given the defendant by personal ser-
vice and a summons to which he failed to answer or de-
mur; that the defendant had been guilty of extreme cruelty

to the plaintiff; that the defendant wantonly and cruelly
failed, refused and neglected to provide suitable main-
tenance for the plaintiff; that the issue of said marriage
was Leota Winter, a daughter three years of age; that the
plaintiff was entitled to a divorce from the defendant, and
to the care, custody and education of their child, Leota
Winter. The decree annulled the marriage relation.
Afterwards at the April term the case came on further to
be heard upon the application of the plaintiff to modify
the decree so as to provide for the payment of alimony at
the rate of $15 a month at the date when the decree was
entered. There was a decree giving the plaintiff $15 a
month from the 10th day of January, 1910, until the
further order of the court. A transcript of the decree
was filed in the office of the clerk of the district court of
Douglas county, and an execution was issued to the sheriff
of that county commanding him to cause to be levied of
the goods and chattels of Leonard Winter the sum of
$105. There was a return on the 14th day of December,
1910, of no goods and chattels, lands or tenements found
in Douglas county upon which to levy and collect the
said judgment. Thereupon a garnishee summons was
issued upon the application of the plaintiff. The applica-
tion alleged the amount due on the judgment; that execu-
tion had been issued and returned unsatisfied for want of
sufficient property belonging to the defendant whereon to
levy; and that the plaintiff had good reason to believe
that the Bennett Company, a corporation, had property
of the defendant and was indebted to him. The Bennett
Company was duly served, and the defendant, Leonard
Winter, then set up that on the 31st of October, 1910, he
was married to Jean McBurney, in the city of Omaha,
and that ever since that time he had been living with his
said wife in said city of Omaha, Nebraska, and that the
defendant therefore was the head of a family; that he had
neither lands, town lots, nor a house subject to exemption
as a homestead under the laws of the state; and that he
and his wife were boarding, and that they had no house-
hold furniture or other property, except the defendant's

wearing apparel, which was alleged to be of a value not exceeding $50. There was a judgment in the district court discharging the garnishee, and finding against the plaintiff and for the defendant, and from this order the plaintiff has appealed.

While it is alleged that the defendant had no notice of the modification of the decree by which the judgment for alimony was rendered against him, he fails to sustain his contention. In the absence of evidence upon the subject, it will be taken that the decree is valid, and that it was rendered in the regular way. Whether the husband by his remarriage may obtain exemption from the liability which he incurred by reason of his first marriage, as set forth in the decree, is to be determined.

In *Foster v. Foster,* 130 Mass. 189, the court held: "A husband may be lawfully arrested on an execution issued upon a decree for alimony; and, upon his application to take the oath for the relief of poor debtors, charges of fraud may be filed against him by his wife."

In *Hoon v. Hoon,* 82 Neb. 688, it was held: "A wife who is a non-resident of the state, and who is separated from her husband without fault on her part, may maintain in the courts of this state an action *in equity* against her husband for support and maintenance."

In *Earle v. Earle,* 27 Neb. 277, it was held: "The law of the land having made it the legal duty of a husband to support his wife and children, *courts of equity* within this state have the power, in a suit by the wife for alimony and support, to enforce the discharge of such duty, without reference to whether the action is for a divorce or not." In the body of the opinion it is said: "But the authority to grant alimony grows out of the equity powers of the court."

In *Galland v. Galland,* 38 Cal. 265, it was held: "The provision for alimony, made in the statute concerning divorces, was not intended to be a prohibition to the granting of alimony in *other* cases. The power to decree alimony falls within the general powers of a *court of*

*equity,* and exists independent of statutory authority. And, in the exercise of this original and inherent power, a court of *equity* will, in a proper case, decree alimony to the wife, in an action which has no reference to a divorce or separation."

In *Garland v. Garland,* 50 Miss. 694, the court said: "Courts of equity in America will *always* interpose to redress wrongs when the complainant is without full, adequate and complete remedy at law. * * * If a wife is abandoned by her husband, without means of support, a *bill in equity* will lie to compel the husband to support the wife, without asking for a decree of divorce."

In *Rhoades v. Rhoades,* 78 Neb. 495, the question for determination was: Did the district court have jurisdiction upon service by publication to subject the interest of the non-resident husband to the maintenance and support of his wife and child? The court said in the body of the opinion: "And it is clear that the district courts of this state, being courts of *general equity jurisdiction,* are not limited in the exercise of such jurisdiction by statute. *Cochran v. Cochran,* 42 Neb. 612. * * * It is here sought, under the general equity powers of the court, to appropriate property of a non-resident which is situated within the jurisdiction of the court, to the maintenance of his wife and child." It was held that the object sought to be accomplished could be accomplished.

In *Cochran v. Cochran,* 42 Neb. 612, the wife had no knowledge of the divorce proceedings until after the date of the decree. Two years after the date of the divorce the wife brought suit in equity against the husband for alimony. Held, among other things: "Our divorce laws are liberal and should be liberally construed; but they are not designed for and should not be used to enable designing husbands, without cause, to legally discard their wives, whether domiciled in this or other states, or to escape the performance of their marriage contracts."

In *Smithson v. Smithson,* 37 Neb. 535, it was held by Judge Post: "It is not the object of the code to abolish existing remedies in cases where no provision is made

Winter v. Winter.

therein for the prosecution of actions. Cases involving substantial rights, which are clearly outside the provisions of the code, may be prosecuted in accordance with the practice previously recognized in courts of common law and equity."

By section 11, ch. 25, Comp. St. 1911, it is provided that a suit (a) "for a divorce shall be conducted in the same manner as *other suits in courts of equity;*" also, that (b) "the court shall have power  *   *   *  to enforce its decrees as in other cases." It will be seen by this section that a divorce case is one to be tried in the same manner as other suits in courts of equity. Then in the same section the court is given the specific power to enforce its decrees as they are to be enforced in other cases.

In *Berdolt v. Berdolt,* 56 Neb. 792, there is a discussion of what may be done in a divorce case. In the body of the opinion in that case it is said: "The issues were tried and the plaintiff in error denied relief. A decree of divorce was granted defendant in error, and all the household furniture was given to her, and the plaintiff in error ordered to pay her the sum of $5,000." There follows in the opinion a discussion of the subject as to what may be done. The court then quotes from the Compiled Statutes the section to which we have just referred, and which we give here in full: "Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and the court shall have the power to award issues, to decree costs, and *enforce its decrees* as in other cases."

In section 12, ch. 25, Comp. St. 1911, it is provided that, in every suit brought for a divorce or for separation, the court may require the husband to pay any sum necessary to enable the wife to carry on or to defend the suit. It is also provided that the court may decree costs against either party, and that it may "direct such costs to be paid out of any property sequestered, or in the *power of the court,* or in the hands of a receiver." It would seem that the legislature intended to give the trial court the widest sort of jurisdiction.

In *Brasch v. Brasch,* 50 Neb. 73, it was held, that the amount to be allowed a wife for the expense of the suit as a condition precedent to the right to further prosecute or defend was within the jurisdiction of the trial court, and that its action would not be disturbed, unless an abuse of discretion should be shown.

In *Pedersen v. Pedersen,* 88 Neb. 55, it was held: "When a divorce is granted to the husband on any ground except adultery committed by the wife, the court may allow permanent alimony to the wife out of the property of the husband."

In *Best v. Zutavern,* 53 Neb. 604, it was said by Sullivan, C. J.,: "The husband's right to an exempt homestead cannot, we think, be urged against the wife who has been forced by his aggression to leave his domicile, and who, in an action for divorce, has obtained a judgment for alimony against him. The homestead law is a family shield, and cannot be employed by either spouse to wrong the other." It was distinctly held in that case that a judgment for alimony in favor of the wife was a lien on the family homestead where the title was held by the husband. Judge Sullivan, in delivering the opinion of this court, cited two Kansas cases, in one of which a decree declared to be a lien on all the husband's realty was held to be a valid lien on the family homestead (*Blankenship v. Blankenship,* 19 Kan. 159). He then said: "The logic of these decisions is that exemption statutes are not designed to protect the husband against the wife's claim for alimony. To the same effect are the cases of *Mahoney v. Mahoney,* 59 Minn. 347, and *Daniels v. Morris,* 54 Ia. 369." *Fraaman v. Fraaman,* 64 Neb. 472, follows *Best v. Zutavern, supra.*

In the light of the cases cited, it would seem that the same reasons which allow the homestead exemption to be sold for the support of the family should apply. The duty of the defendant to comply with the decree to the extent of $15 a month is as strong as the duty which binds him to the wife in Omaha. A consideration of sections 8099-8106, Rev. St. 1913, relating to exemptions, shows that the protection of the family, and not the husband,

is the object of the statute. It could never have been designed to allow a man to escape his obligations to his family. Why, then, should it not protect the family against him as well as protect it against a creditor.

In this case there is no justice in permitting the defendant to deny support to his first wife and to his little daughter. If the defendant can create a condition with which to successfully defend himself against the decree of the court, then it may well be doubted whether the decree is of any use. The defendant knew that he was under obligations to satisfy the decree that the court had rendered against him for alimony, and he knew that he was bound to support his little child and to aid in the support of his wife as provided by the decree. The law ought not to permit him to construct a shield that will protect him in his marital and domestic recklessness. By getting married again, he ought not to be permitted to relieve himself from the burden of supporting the child that he caused to come into the world. When the legislature passed the act providing for the exemption of the "head of a family," it certainly did not contemplate that, after a man had failed to provide for his wife and the children born to them, he could in defiance of the decree of the court avoid the natural duty of providing for his children. The $15 which the wife was allowed was meant to drive the wolf from the door. The defendant should be compelled to pay it.

That branch of jurisprudence which treats of marriage is most important. Marriage furnishes the basis of a permanent and Christian civilization. The duties assumed under it should be conscientiously discharged. Courts of equity will compel the enforcement of marriage obligations, and no mere rule of law sought to be interposed by him will permit the derelict husband to escape the burden of supporting his wife and children.

In England it is said always to have been the accepted doctrine that marriage as an institution is the keynote of the commonwealth and the highest expression of morality; that "if a wife secures an order for alimony against her

husband, he being a man of property, the court may require him to give security for its payment, or direct him to make a transfer of money to a trustee or trustees for the convenient payment to the wife." Ringrose, Marriage and Divorce Laws of the World, p. 26.

The right of exemption is based purely upon a law remedy. In the instant case the defendant is separated from his wife because of his neglect to perform the obligations that are incumbent upon him as a husband. He neglected to provide for his wife and child. He neglected to comply with the decree of the court. He undertook to stand above the court and to disregard its decree. In doing this he interposed, or attempted to interpose, the exemption law as a shield to protect him from doing that which the court had clearly decreed that he should do.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

BARNES, LETTON and SEDGWICK, JJ., not sitting.