[No. 28991. Department One. August 6, 1943.]

EVELYN R. STAFFORD, *Respondent,* v. MORGAN A. STAFFORD *et al., Appellants.*[1]

[1]Reported in 140 P. (2d) 545.

*John C. Hurspool,* for appellants.

*Geo. W. Thompson* and *Keylor Smith,* for respondent.

JEFFERS, J.—On July 28, 1922, Evelyn R. Stafford obtained an interlocutory decree of divorce from Morgan A. Stafford, in the superior court for Walla Walla county. The facts in this case have been stipulated, and are in substance as follows: Prior to the hearing in the divorce action above referred to, Mr. and Mrs. Stafford entered into a written property agreement, which agreement was embodied in the interlocutory decree. We make this statement for the reason that the payments which Mr. Stafford was required in the decree to make to his wife were payments which he had voluntarily agreed to make, and for the further reason that we believe it has some bearing on the construction placed upon the decree by the trial court.

The particular provision of the property settlement to which we desire to call attention, which, as stated, was incorporated in the interlocutory decree, provides that Mr. Stafford would pay to his wife the sum of one hundred dollars per month for the care, maintenance, and support of herself and the minor child, Benton Stafford, such sum to be continued and payable on the fifteenth of each month so long as Mrs. Stafford remained single; if, however, Mrs. Stafford should remarry prior to the time the son arrived at the age of twenty-one years, the payments from and after the time of such remarriage were to be fifty dollars per month, and all such payments were to cease in case of the remarriage of Mrs. Stafford when the son became of age.

On February 10, 1923, the court made and entered a

final decree of divorce in the action, confirming in all respects the interlocutory decree.

On April 13, 1927, Mrs. Stafford instituted contempt proceedings against Mr. Stafford in the original action, alleging that he had failed to pay a certain mortgage, as required by the decree, and that he had also failed to pay to her the sum of one hundred dollars per month for the support of herself and the minor son. Mr. Stafford appeared in the case, and claimed, among other things, that, under the conditions then existing, it was inequitable to require him to continue to make the monthly payments of one hundred dollars. After a hearing, Judge Kuykendall made and entered an order on April 25, 1927, which provided in substance that if Mr. Stafford paid to Mrs. Stafford, on or before July 17, 1927, the sum of $1,175 which was then due her under the divorce decree, then the decree relative to alimony and support money would be modified as therein specified, but that if such delinquent payments of alimony and support money were not paid by July 17, 1927, then the decree should remain in full force and effect, as made and entered on July 28, 1922. No appeal was taken by either party from the order of April 25, 1927. Mr. Stafford made no payments as required by the order.

On January 31, 1930, Mrs. Stafford instituted another contempt proceeding against Mr. Stafford, setting up as a basis for such action the failure of Mr. Stafford to make the payments required of him under the divorce decree. Mr. Stafford appeared and set up his inability to make such payments, but did not ask for a modification of the decree or the order of April 25, 1927. The matter came on for hearing, and thereafter Judge Kuykendall made and entered the following order:

"Now, THEREFORE, it is by the court ORDERED, ADJUDGED and DECREED that until the further order of the court and *without prejudice to the rights of the plaintiff* [Evelyn R. Stafford] *herein to recover the sums of money now due and owing her from defendant* [Mor-

gan A. Stafford], *under the terms of said decree* [the original decree], *and without prejudice to her rights to compel the payment of the said mortgage indebtedness or to recover the amount thereof from defendant in case she is compelled to pay the same herself, and without prejudice to the rights of the plaintiff to recover from the defendant any sums of money to become due under the terms of the original decree and the contract of settlement of property rights heretofore and prior to the entry of said decree, made and entered into by and between the plaintiff and defendant herein,* the defendant is required to pay to the plaintiff the following sums of money, to-wit:

"If the said Benton Stafford, the minor son of the said parties, resides with his father, the defendant herein, then the defendant is to pay to the said Evelyn R. Stafford, the plaintiff herein, the sum of Thirty-five ($35.00) Dollars, on the 15th day of each and every month, until the further order of the court, currently, commencing on the 15th day of March, 1930.

"If the said Benton Stafford, the minor son of said parties, resides with his mother, the plaintiff herein, then the said defendant, Morgan A. Stafford, shall pay to the said plaintiff, Evelyn R. Stafford, the sum of Sixty-five ($65.00) Dollars, on the 15th of each and every month hereafter, until the further order of the court, currently, commencing on the 15th day of March, 1930.

"And it is further ordered, adjudged and considered by the court that upon the failure of the said defendant, Morgan A. Stafford, to make said payments, in the manner and at the times herein prescribed, if within his power so to do, then he is and shall be considered in contempt of this court and shall be committed to the county jail." (Italics ours.)

On July 30, 1931, defendant filed his declaration of homestead on lot 42, of block "Q," Shield's second addition to Walla Walla, and such property has since been occupied as a home by defendant. On October 16, 1935, defendant married Mabel Stafford, his present wife, intervener herein, and since this marriage defendant and intervener have resided, and still reside, upon the homestead.

On August 2, 1941, plaintiff, Evelyn Stafford, caused an execution to issue, based upon the unpaid balance of the one hundred dollars per month awarded to her under the original decree, and caused such execution to be levied upon the homestead property, together with certain other real property, and proceeded to have such property advertised for sale. Defendant appeared and asked that the sale be enjoined, and for a modification of the decree, in so far as the payments of alimony were concerned. Mabel Stafford intervened, and asked that the sale of the two pieces of real estate other than the homestead be enjoined, alleging that one of such pieces of property was acquired by defendant and herself since their marriage, and was community property; that an action was now pending to quiet title to this property in defendant and intervener as against the claims of plaintiff; that the second piece of property was acquired by intervener with her own separate funds, and was her own separate property.

A hearing was had on the issues framed by such pleadings, after which the court made and filed its memorandum opinion, and thereafter made and entered findings of fact, conclusions of law, and judgment. The judgment entered enjoined plaintiff from selling the two pieces of property set up in the complaint in intervention, but denied the right of defendant to enjoin the sale of the homestead property. The court also refused to modify the decree relative to the payment of alimony. Defendant and intervener have appealed from that part of the judgment holding that the homestead is not exempt from execution sale to satisfy plaintiff's judgment for unpaid alimony, and from that part of the judgment holding the divorce decree is not subject to modification as to the payment of alimony.

Error is based upon the court's holding that appellant Morgan A. Stafford's homestead was subject to levy and sale to satisfy alimony payments due and un-

paid, and upon the holding of the trial court that the decree of divorce could not be modified, in so far as the payments of alimony were concerned.

The first question presented is whether or not the real property acquired by appellant Morgan A. Stafford after the final decree of divorce had been entered, and upon which a declaration of homestead had been filed, is subject to sale on execution to satisfy a judgment for accrued and unpaid alimony.

No question is raised as to the right of appellant Morgan A. Stafford to file the homestead declaration. We assume the minor son was living with him at that time.

We may say here that, in view of the fact that the property in question was acquired by Mr. Stafford prior to his marriage to his present wife, Mabel Stafford, and in view of the further fact that the declaration of homestead was filed by Mr. Stafford prior to such marriage, we have not, in reaching our conclusion, assumed or considered that Mabel Stafford has any rights in the homestead which could defeat the levy and sale by respondent, if Mr. Stafford has no such rights.

The final decree of divorce required Mr. Stafford to pay to respondent the sum of one hundred dollars per month for the support and maintenance of herself and the minor son, Benton Stafford, as hereinbefore set out.

Appellants cite Rem. Rev. Stat., §§ 532 and 533 [P. C. §§ 7863 and 7864], contending that the provisions of those statutes are so clear and unambiguous that they are not subject to any construction other than as indicated by their plain and simple language; that the only exceptions to the provisions of § 532 are those contained in § 533, and that, as judgments for unpaid alimony are not included in the exceptions contained in § 533, it follows that the homestead is not subject

to execution or forced sale in satisfaction of judgments for accrued and unpaid alimony.

Rem. Rev. Stat., § 532, provides:

"*The homestead is exempt from execution or forced sale, except as in this act provided;* and the proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, shall likewise be exempt for one year, and also such new homestead acquired with such proceeds; *and no judgment, or other claim* against the owner of a homestead, except by mortgage, shall be a lien against such homestead in the hands of a bona fide purchaser for a valuable consideration." (Italics ours.)

Rem. Rev. Stat., § 533, provides:

"The homestead is subject to execution or forced sale in satisfaction of judgments obtained: (1) On debts secured by mechanic's, laborer's, materialmen's or vendor's liens upon the premises. (2) On debts secured by mortgages on the premises executed and acknowledged by the husband and wife or by any unmarried claimant."

The trial court, as stated by respondent in her brief, rested its decision on the question now being considered, upon the ground that a homestead claimed in separate property of the husband is not exempt from levy and sale on execution to satisfy a judgment for accrued and unpaid alimony of the divorced wife, for the reason that such judgment for alimony is not a debt, within the meaning of the homestead laws of this state, citing as the principal authority to sustain her contention the cases of *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294, and *Fisch v. Marler,* 1 Wn. (2d) 698, 97 P. (2d) 147, to which we shall later refer. Respondent also cites Rem. Rev. Stat., § 561, [P. C. § 7892] and some authority from other jurisdictions, to sustain her contention that a homestead is not exempt from sale on execution to satisfy a judgment for accrued and unpaid alimony.

Much has been said by this court relative to judg-

ments for alimony, and it is a little difficult to determine from a reading of our decisions just what the status of such a judgment is. Nor do the courts of other states seem to have been much more specific. It is true, as contended by respondent, that we have stated that such a judgment is not a debt, but, assuming this to be true and regardless of what terms we may apply to such a judgment, does it necessarily follow that a homestead is not exempt from sale on execution to satisfy such a judgment, when our statute specifically provides it is exempt from *execution and forced sale, except as in the homestead act provided,* and no exception is made of judgments for alimony?

Let us look at some of the cases in which we have held such a judgment is not a debt, and see what situation was presented.

In the case of *In re Cave,* 26 Wash. 213, 66 Pac. 425, 90 Am. St. 736, we stated:

"It is the well settled law of this country that a decree or order for alimony in a divorce proceeding is not a debt, within the meaning of that term as used in § 17, of article 1 of our constitution [which provides: 'There shall be no imprisonment for debt except in case of absconding debtors']."

In the cited case, George Cave had been ordered by the court to pay to his wife alimony, court costs, and attorney's fees, and, upon his failure so to do, it was further ordered that he be committed to jail for contempt. Cave refused to comply with the order, whereupon the court ordered him committed to jail until the full sum of alimony, court costs, and attorney's fees were paid. One of the contentions made by Cave was that the decree in the divorce proceedings was a judgment for debt, and that he could not be imprisoned for failure to pay the same. This question was not discussed in the opinion, other than appears from the statement above set out.

In *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017, we stated:

"The question is whether or not a decree entered in a divorce action, providing for the payment of alimony in monthly installments, appearing upon the records of the court to be wholly or partially unsatisfied, and including installments which have accrued less than six years prior to the suing out of the writ, constitutes such a judgment as will support a writ of garnishment."

After citing cases from this court, the opinion further states:

"While the precise question here urged was not presented in any of the cases cited, we are clearly of the opinion that, under those authorities, it must be held that a judgment for alimony payable in installments is, in so far as accrued installments are concerned, such a judgment as affords a legal basis for the issuance of a writ of garnishment."

Appellants rely particularly upon the case of *Philbrick v. Andrews,* 8 Wash. 7, 35 Pac. 358. It was admitted by the trial court that this was the only case in the state which seems to have directly touched the question here presented. The case has been cited many times, although not directly on the point here in issue, and has never been reversed or modified. The *Philbrick* case was decided in 1894, and at that time the following statute was in full force and effect:

"There shall be also exempt from execution and attachment to every householder, being the head of a family, a homestead not exceeding in value the sum of one thousand dollars, while occupied as such by the owner thereof, or his or her family." Hill's Code, vol. 2, § 481.

In the cited case, the husband and two minor children of his first wife lived upon certain land patented by him during the life of his first wife, as a homestead claim. The first wife died, and the husband married a second time. The second wife procured a divorce from him, the decree awarding to the wife fifteen hundred

dollars as alimony. No property, real or personal, was described in the decree, and it did not appear that any property was described in the pleadings. A judgment for fifteen hundred dollars and costs was docketed, and a general execution was issued thereon. The sheriff proceeded to levy upon the homestead. In the course of the opinion, we stated:

"There is no question but that the court had power in the divorce action to award the half belonging to the defendant, or any part of it, to the plaintiff, *or to render a judgment for a sum of money and make it a specific lien thereon which would take precedence of a homestead exemption.* But to do either it was necessary that the property should have been brought before the court [citing case], and the proper way to have done this was to describe it in the pleadings [citing case]. If the property was not brought into said case by either party, the court had no jurisdiction over it and could not dispose of it therein, *nor create a specific lien thereon.*

"It was for the plaintiff in this case to show that the facts were such as to give the court this authority, and in the absence of any showing to that effect, *the judgment rendered in favor of the plaintiff therein could not be made a lien upon the defendant's property except by an execution levy,* or by causing the judgment to be recorded in the office of the county auditor, under § 449, Code Proc., *when, as in the case of other judgments,* it would become a lien upon his real estate; *but in either of these cases the defendant's right to a homestead exemption would be a paramount claim.* . . . The fact that the judgment was in favor of the wife would make no difference." (Italics ours.)

While the factual situation presented in the *Philbrick* case is different from that presented in the instant case, nevertheless the main question presented was whether or not a judgment in favor of the wife for alimony created a specific lien, the judgment not so providing, or any lien which entitled the wife as the owner of such judgment to levy upon and sell the homestead.

█ It seems to us the effect of the decision in the *Philbrick* case is that a judgment for alimony does not create a specific lien on any property of the husband, unless the property is described in the decree, and the decree by its terms makes the judgment for alimony a specific lien on such property; that only where a specific lien is created may the homestead be sold to satisfy the judgment for alimony. If the judgment for alimony does not make it a specific lien on property of the husband, then the judgment does not become a lien on any property of the husband until a levy is made, in which case the right of the husband to a homestead exemption would be paramount to the lien thus created.

In the instant case, the decree awarding the respondent alimony did not create, and of course could not have created, a specific lien on the property here involved, as it was not acquired by appellant until after the decree was filed.

In the case of *Seattle Brewing & Malting Co. v. Talley,* 59 Wash. 168, 109 Pac. 600, we stated:

"The general rule seems to be that a 'decree for alimony creates no lien upon the estate of the husband, in the absence of statutes so providing, unless the decree fastens it upon some particular property. It is a personal charge upon the husband rather than upon his estate.' 2 Am. & Eng. Ency. Law (2d ed.), p. 133. The statutes of this state do not make a decree for alimony a lien upon real estate."

The trial court recognized the effect of the decision in the *Philbrick* case, but seemed to be of the opinion that in spite of that case, the question here involved is determined by "the broad, comprehensive rule laid down in the *Coldiron* and *Marler* cases," to which we shall now refer.

In the case of *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294, the wife, by an interlocutory decree of divorce, was awarded alimony in the sum of sixty dollars a month, and sixty-five dollars a month for

the support of a minor child. The decree ordered the husband to assign $125 monthly to the wife from payments receivable by him from New York Life Insurance Company. On failure of the husband to make the assignment, and on his failure to pay the alimony installments for November and December, 1936, and January, 1937, the wife caused a writ of garnishment to issue and be served on the insurance company. The insurance company answered that it had in its possession certain money due the husband for disability payments under the provisions of his insurance policies. The husband filed a claim for exemption under Rem. Rev. Stat., § 569 [P. C. § 7854-1], which provides:

"That the proceeds or avails of all accident and health insurance heretofore or hereafter effected shall be exempt from all liability for any debt of the assured, and any debt of the beneficiary existing at the time the policy is made available for his use."

In the course of the opinion, we cited the case of *Boudwin v. Boudwin, supra,* as authority for the proposition that a decree of divorce awarding alimony in specific monthly installments is a legal basis for a writ of garnishment. We stated that alimony and support money payments due are not a debt, as that term is used in the statute. The opinion thereafter contains the following statement:

"The allowance of alimony to the wife is not a debt or liability within the meaning of any provision of our constitution, or any statute relating to exemptions."

It must be admitted this is a broad statement. The only statute, in so far as the opinion reveals, which was under consideration was that hereinbefore set out. The opinion can logically be sustained upon the theory that a judgment for alimony not being a debt, the particular exemption statute, being based upon a debt, did not entitle the appellant to an exemption thereunder from a judgment for alimony. The ques-

tion of a homestead exemption was not involved in the cited case, and the *Philbrick* case was not cited. Nor do we see anything in the cited case upon which an argument could be based that the decision in the *Philbrick* case was in any manner affected by the cited case.

It should be kept in mind that Rem. Rev. Stat., § 532, which is particularly relied upon by appellants, says nothing about the basis for the execution or forced sale; all it says is that the homestead is exempt from execution or forced sale, except as in the act provided. Section 533 contains the only exceptions. These statutes have been on the books for many years, and it would seem that, if the legislature had intended that the homestead should not be exempt from a judgment for alimony, it would have so provided, especially in view of the decision in the *Philbrick* case.

The case of *Fisch v. Marler*, 1 Wn. (2d) 698, 97 P. (2d) 147, involved, among others, the question of whether or not the earnings of a divorced husband, who had subsequently remarried, could be garnished to satisfy a judgment for alimony obtained by his first wife. The contention of the husband was that his present earnings, which were sought to be garnished, were the community property of himself and his present wife, and therefore not subject to garnishment for the satisfaction of a separate judgment against him. It is true that in that case we stated:

"It must be conceded that this presents a difficult problem; for, seemingly, we must adopt, as controlling of this case, one of two conflicting principles. One principle, well settled in this jurisdiction, is that community property may not be taken in satisfaction of a separate judgment or indebtedness of either spouse. The other principle, if we are to give it recognition, is that a divorced wife has such an interest in the earnings of her former husband as will support a garnishment for unpaid installments of alimony."

In the cited case, we referred to and quoted from the *Coldiron* case, *supra,* wherein the court, in support of its conclusion, reasoned by analogy as follows:

" 'If the funds in controversy are exempt, then the wages of the divorced husband, upon remarriage, would be exempt under our community property law. A divorced husband cannot, by remarriage, escape the obligation to pay alimony imposed upon him for the support of his divorced wife and minor child, even if the additional burdens imposed by his remarriage tend to exhaust his earnings, since his divorced wife and child have a prior claim upon his earnings until the modification of the decree in a direct proceeding therefor.' "

We then, in the *Marler* opinion, set out five rules, the first one of which states:

"The subsequent marriage of a divorced husband does not relieve him of his obligation to pay to his former wife permanent alimony as required by the decree of divorce, and the former wife has, and continues to have, a fixed and prior claim upon his earnings for the payment of such alimony. This rule finds particular support on grounds of justice and reason where there is a minor child or children of the former marriage."

While the opinion in the *Marler* case does not stress the point other than it cites and quotes from the *Coldiron* case, *supra,* the decision can logically be sustained upon the theory that the rule that community property may not be taken in satisfaction of a separate judgment or indebtedness of either spouse, was based on the fact that the judgment therein referred to was a debt, while, as we have stated, a judgment for accrued and unpaid alimony is not a debt.

We are entirely in accord with the decisions reached in the two cases last above referred to, but we are unable to see that these decisions affect the decision in the *Philbrick* case. The rule announced in the latter case does not deny relief to the wife who holds a judgment for alimony, except that it holds that the homestead exemption is paramount to a judgment for

alimony, unless such judgment is made a specific lien on specific property.

■ In view of the plain language of § 532, *supra,* and in view of the decision in the *Philbrick* case, we are of the opinion it must be held, under the facts in this case, that appellants' claim that the homestead is exempt from execution sale to satisfy respondent's judgment for unpaid alimony must be sustained.

Both sides to this controversy have cited authority from other jurisdictions, and many general statements may be found sustaining the contentions of both parties. Thus, in the case of *Winter v. Winter,* 95 Neb. 335, 145 N. W. 709, 50 L. R. A. (N.S.) 697, cited by respondent, the divorced wife, who had by the decree of divorce been awarded a judgment for alimony, garnished the wages of her former husband, who had remarried. The court, like our court, held such wages subject to garnishment. The cited case referred to and quoted from the case of *Best v. Zutavern,* 53 Neb. 604, 74 N. W. 64 (which is also cited by respondent), apparently adopting the reasoning of the *Best* case to justify such garnishment. The reasons advanced in the *Best* case to support the conclusion, and which were quoted in the *Winter* case, were as follows:

" 'The husband's right to an exempt homestead cannot, we think, be urged against the wife who has been forced by his aggression to leave his domicile, and who, in an action for divorce, has obtained a judgment for alimony against him. The homestead law is a family shield, and cannot be employed by either spouse to wrong the other.' "

The opinion in the *Winter* case continues:

"It was distinctly held in that case that a judgment for alimony in favor of the wife was a lien on the family homestead where the title was held by the husband."

Turning to the case of *Best v. Zutavern, supra,* what do we find the situation to be? We quote from the opinion:

"From the petition filed in the district court it appears that Best was the patentee of 160 acres of land in Johnson county, which he occupied with his wife and children from 1863 till 1887. In the latter year his wife sued him for a divorce, which she obtained, together with a judgment for $1,250 alimony, which was made *a specific lien on the family homestead* and ordered to be paid in installments." (Italics ours.)

The *Best* case is entirely in line with our decision in the *Philbrick* case, and is authority only for the proposition that where the wife, by a divorce decree, is awarded a judgment for alimony, which is made a specific lien on the family homestead, the husband cannot thereafter claim the homestead as exempt, to defeat a sale of the homestead to satisfy such a judgment.

In a note to *Schlaefer v. Schlaefer,* 112 F. (2d) 177, 186 (also cited by respondent), we find this general statement:

"It is the general rule that the homestead is not exempted from the wife's claim for alimony or support *when the decree awarding it creates in express language a lien against the homestead."* (Italics ours.)

See notes 11 A. L. R. (1921) 123; and 106 A. L. R. (1937) 669.

But when the claim is asserted subsequently and against a husband who remains or again becomes the head of a family following the decree, the usual result is to the contrary.

It may be that too much weight should not be given to authority from other states on this question, without a careful examination of their homestead laws, but we find a good many cases holding, as does the case of *Biffle v. Pullman,* 114 Mo. 50, 21 S. W. 450, that a divorced wife may not have a general execution issued and a sale of the homestead thereunder to satisfy a judgment for alimony. The cases we have examined, like the one last cited, apparently were cases, like the *Philbrick* case and the instant one, where there was no specific lien created by the decree.

On the first question here presented, we conclude, for the reasons herein assigned, that appellants were entitled to have the sale of the homestead enjoined.

We now pass to the second question presented by appellants, which is that they are entitled to have the decree awarding alimony to respondent modified.

We are unable to agree with this contention. In neither the interlocutory nor final decree of divorce was there any provision by which the court reserved jurisdiction to make further orders relative to either the alimony awarded the wife or support money for the minor son. We agree with the trial court that the decree was not modified during the minority of the son.

The order entered by Judge Kuykendall on April 25, 1927, reducing the payments to sixty-five dollars per month, was made subject to Mr. Stafford paying to respondent, by July 17, 1927, the sum of $1,175, due under the original decree, it being provided that, if such payment was not made, the original decree should remain in full force and effect. The specified payment was not made, nor, so far as this record discloses, was the order of Judge Kuykendall complied with in any respect. This being true, the original decree remained in full force and effect.

Nor, in our opinion, did the order of Judge Kuykendall entered March 17, 1930, modify the original decree. The only thing which the order of March 17th did was to find that at that time Mr. Stafford was unable to pay more than the sums therein specified, and that if he did not make such payments he would be in contempt of court. This order expressly reserved to respondent all rights given her under the original decree to recover the sums of money due her thereunder and all sums to become due thereunder.

It may be admitted that, under the decision in the case of *Hart v. Hart,* 174 Wash. 316, 24 P. (2d) 620, the decree in this case not having segregated the amount to be paid respondent as alimony and the amount to

be paid her for the support of the minor son, the court could, during the son's minority, have made an order modifying the decree, even though that decree contained no reservation of jurisdiction. However, as stated, this was not done.

In the case of *Evans v. Evans,* 116 Wash. 460, 199 Pac. 764, the award did not segregate the amount intended for the maintenance and education of the children and the amount which was intended for the support and maintenance of the wife. In a case such as that last cited, the wife may recover for any amounts delinquent and due under the decree, prior to the time such minor becomes of age, assuming, of course, that such claims are not barred by the statute of limitations; but, after the minor becomes of age, the wife would be entitled only to such sum as was intended for her maintenance, or in other words, the amount awarded to her as alimony.

We are of the opinion that the case of *Ruge v. Ruge,* 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721, is authority for the proposition that, where a divorce is absolute, the alimony award is permanent, there are no minor children, there is no express reservation in the decree, and there is no statute conferring upon the court the authority to modify or alter its decree in respect to alimony for the support of the wife, such decree cannot be modified. We are of the opinion that even though the awards of alimony and support money for the minor are not segregated, if the court can determine from the decree what amount was intended to be allowed as alimony, the court may, after the minor has become of age, segregate and determine the amount that was intended to be awarded as alimony, and that as to such amount the court has no authority to modify the decree after the minor has become of age, where there is no reservation of jurisdiction and no statute authorizing such modification. See *Evans v. Evans, supra,* and *Cooper v. Cooper,* 146 Wash. 612, 264 Pac. 1.

■■ Under the terms of the original decree in this case, Mr. Stafford was required to pay respondent the sum of one hundred dollars per month for the support and maintenance of herself and minor son, Benton Stafford, and such sum was to be paid as long as respondent remained single. However, it was further provided in substance, as stated by the trial court in its memorandum opinion, that, in the event of the remarriage of respondent before the minor became of age, the sum of fifty dollars should be paid respondent until the minor reached the age of twenty-one, at which time the payment of fifty dollars would cease. We are of the opinion, as was the trial court, that this indicates a clear intention to fix the alimony at a definite amount of fifty dollars per month. In other words, it indicates to us, as it did to the trial court, that it was the intention of the parties, as shown by their property settlement, which was embodied in the decree, that fifty dollars of the one hundred dollar award was intended as alimony for the support of the wife, and was to continue until and unless respondent remarried; that if respondent remarried before the son became of age, then and in that event the alimony award of fifty dollars should stop, but Mr. Stafford would still be required to pay fifty dollars a month for the support of the minor until he became of age, when such payment would stop.

The respondent has not remarried, and since the minor son has become of age, the trial court was authorized to make the segregation as it did, and to find that respondent was entitled to the sum of fifty dollars per month as alimony under the decree.

We therefore conclude, on the second question presented, that the trial court correctly held there had been no modification of the decree during the minority of the son, and that, the son having become of age, the court was not authorized to modify the original decree as to the alimony payments.

We are further of the opinion that the court cor-

rectly concluded that appellant Morgan A. Stafford failed to show that he was unable to make the payments of thirty-five dollars a month, as ordered by Judge Kuykendall, which order was not intended to, nor did it in any way, affect the right of respondent to recover from appellant the full sum of fifty dollars per month, when and if it could be shown that appellant was able to make such payments.

The judgment of the trial court is reversed, in so far as it holds respondent is entitled to have the homestead sold to satisfy the accrued and unpaid installments of alimony, with instructions to the trial court to enter a judgment enjoining such sale. The judgment will otherwise be affirmed. Neither party will recover costs on this appeal.

SIMPSON, C. J., STEINERT, and MALLERY, JJ., concur.

MILLARD, J. (concurring)—I concur in the majority opinion. I desire, however, to reiterate my dissents against the controlling opinion in *Shibley v. Shibley*, 181 Wash. 166, 42 P. (2d) 446, and in *Stafford v. Stafford*, 10 Wn. (2d) 649, 117 P. (2d) 753. The opinions of the courts in endeavoring to justify their answer to the question whether a decree or judgment for alimony is a debt, are, in the main, logomachical.